**J. A. ROBINSON SONS, INC., Appellant,**

v.

**Helen O. WIGART et al., Appellees.**

**No. 7727.**

Court of Civil Appeals of Texas.

Amarillo.

Oct. 2, 1967.

Rehearing Denied Oct. 30, 1967.

**478**

———◆———

Burford, Ryburn & Ford, Dallas, Underwood, Wilson, Sutton, Heare & Berry, R. A. Wilson, Amarillo, for appellant.

Warren Burnett and Robert D. Pue, Odessa, for appellees.

CHAPMAN, Justice.

Helen O. Wigart, her two minor children and the minor child of her deceased husband by a former marriage brought suit against J. A. Robinson Sons, Inc., for the wrongful death of William Robert Wigart, their husband and father. Texas Employers' Insurance Association, the workmen's compensation carrier for Wigart's employer intervened to assert its recoupment rights under the Workmen's Compensation Act. Wigart, an employee of Boman-Chase, was killed on August 1, 1963, when a welding shed fell from a flat-bed truck owned by Robinson and driven by Chester Britain, and struck Wigart. The trial court's judgment, based on a jury verdict, was rendered for the plaintiffs below.

Boman-Chase, a construction company, was employed by Phillips Petroleum Co. to dismantle a cooling tower which was located at a Phillips refinery. Approximately twelve of Boman-Chase's employees were engaged in this particular job. Some four days prior to the incident resulting in Wigart's death, Robinson was contacted by Phillips and made arrangements for Robinson to furnish a truck and trailer and a driver. The tractor or trailer was 8' x 28' with a capacity of 12 tons. The truck was used for the hauling of material from the dismantled cooling tower. When this was completed, a metal welding shed was placed on the trailer and moved to another site. The shed was constructed of corrugated iron, was approximately 28'–30' long and 10'–12' wide. While the shed was being unloaded it slid from the truck and struck Wigart, causing his death.

In response to Special Issues, the jury found: (1) Chester Britain was acting in the course of his employment for J. A. Robinson Sons, Inc.; (2) that Britain was negligent in slacking the winch line immediately prior to the accident; (2b) that such negligence was a proximate cause of Wigart's death; (4) that Wigart removed a pin at the rear corner of the trailer immediately before his fatal injury; (4b) that such action was not negligence; (5) that it was not open and obvious that Wigart might sustain an injury in the very manner in which he sustained his fatal injury; (5b) that he did not know and appreciate the danger; (6a) that Wigart did not fail to maintain proper lookout; (7) that a gust of wind was not the sole proximate cause of Wigart's death; (8) that Chester Britain was not a special or loaned employee of Boman-Chase; (9) that Wigart's death was not the result of an unavoidable accident. The jury awarded a total of $92,500.00 damages to Mrs. Wigart and the three minor children. Upon these findings, judgment was rendered for the plaintiffs and intervenor in the amount found by the jury.

Appellant's first group of points of error attack the judgment against it on the basis of Britain being a special or loaned employee of Boman-Chase. The jury found Britain was acting within the scope of his employment for appellant Robinson, and that he was not a special or loaned employee of Boman-Chase. Appellant contends there is no evidence and insufficient evidence to support these issues. Boman-Chase had a contract with Phillips Petroleum Company to dismantle the cooling tower. During the last four days of the job, Robinson, at Phillips' request, sent a truck and a driver

to the job for the purpose of hauling the dismantled materials to a designated location. The loading and unloading of the material was performed by employees of Boman-Chase. Robinson's driver only operated the truck and its equipment. No "swamper" or assistant was assigned by Robinson to Britain. The usual duties of such an assistant, such as giving signals to the driver, were performed by various employees of Boman-Chase. The particular job had been completed except for the moving of the welding shed. The shed was loaded upon the truck by means of pulling it upon the trailer with the winch line on Robinson's truck with the assistance of another winch truck not owned by Robinson. It was then secured on the trailer by means of chains and the winch line, and then moved approximately one mile to another location. It was during the process of unloading the shed from the trailer that Wigart was fatally injured. It was being unloaded by what was referred to as "shaking it off". The winch line was unwound two to three feet; the truck was then placed in reverse. It moved two to three feet when the driver applied the brakes. By repeating this process the shed was gradually moved toward the end of the trailer by its own momentum until it reached a "breaking point" and then it would slip from the trailer by its own weight. During this time Wigart was outside the truck on the right side and Miller, another Boman-Chase employee, was on the opposite side. After several "shaking" movements of the truck and while the winch line was loose, the shed fell from the trailer and struck Wigart.

 One of the principal questions presented is whether Britain, a general employee of Robinson, became a special or loaned employee of Boman-Chase for this particular operation. A determination of this question calls for the consideration of many factors. It generally depends on which of the employers retains the right of control and direction over the employee and the job the employee was engaged in while performing the act complained of.

57 C.J.S. Master and Servant § 566, page 284–291. Restatement of the Law of Agency, Vol. 1, Section 227. The general rule was stated by our Supreme Court in Producers Chemical Company v. McKay, 366 S.W.2d 220 in the following language:

> "If the general employees of one employer are placed under the control of another employer in the manner of performing the services, they become his special or borrowed employees. If the employees remain under control of their general employer in the manner of performing their services, they remain employees of the general employer and he is liable for the consequences of their negligence."

In *McKay*, the court lists certain factors to be considered where there is only an implied contract between the employers as to the right of control over the employee. These include the nature of the general project; the nature of the work to be performed by the machinery, and employees furnished; acts representing an exercise of actual control; the right to substitute another operator of the machine, etc.

 It is undisputed there was no contract whereby Robinson expressly relinquished the right of control of Britain in the operation of the truck and its equipment. Our courts have repeatedly held that the decisive factor in this type of case is the control of the "machine" rather than the control of the results of the work desired. Insurors Indemnity & Insurance Co. v. Pridgen, 148 Tex. 219, 223 S.W.2d 217. Goodwin v. Wilhelm Steel Construction Co. (Tex.Civ.App.) 311 S.W.2d 510 (Writ Ref.). The proper operation of the truck and its winch and gears required some skill and knowledge of its operation. The job was of short duration. The relocation of the welding shed was to have been the last of the work to be performed by Britain on this particular job and this occurred on the fourth day. Employees of Boman-Chase loaded and unloaded the dismantled ma-

terial onto Robinson's truck and directed the driver where to haul it. There is no evidence Boman-Chase's employees exercised any control over Britain's operations of the truck or its equipment. This was Britain's responsibility. Robinson had the sole right to substitute another driver for its truck and Robinson charged Phillips by the hour for its truck and driver and the former paid Britain for his services. Under these facts, the only reasonable inference to be drawn is that Robinson, the general employer, had retained control over its driver.

However, appellant strongly urges that in performing the special act of "shaking off" the shed from the trailer, Britain was within the scope of the business of Boman-Chase and under Wigart's direction and control. They argue the unspooling of the winch line was an essential part of unloading the shed and that this operation was under the supervision of Wigart. Appellant's position is that the determining factor is Wigart's direction as to the manner in which the truck and winch were to be used to unload the shed and not the manner in which Britain shifted his gears or unspooled the winch line. Under the facts and circumstances of this case this contention is without merit. Insurors Indemnity & Insurance Co. v. Pridgen (supra), and Polanco v. Austin Bridge Company (Tex.Civ.App.) 348 S.W.2d 728. Wigart and Britain both decided the best method of unloading the welding shed was to "shake it off". Wigart designated the place to unload the shed. Britain placed his truck in position, and when Wigart indicated it was clear, Britain began the "shaking off". Britain decided when to begin each truck movement and when to unspool the winch. He operated the truck and gears without any direction or signal from Wigart. Britain was in full control of the truck and its equipment and how and when it was to be used. There was ample evidence to support the jury finding Britain was acting within the scope of his employment of Robinson and was not a loaned employee of Boman-Chase.

Appellant levelled numerous objections to Special Issue No. 1 and the accompanying definition of "course of employment". The issue inquired if Britain was acting within the scope of his employment for Robinson "at the time of the accident in question". It is urged the issue did not confine the question of employment to the "shaking off" operation; the issue was a comment on the weight of evidence in assuming Britain was to be viewed as Robinson's employee in the "shaking off" operation; and challenged the court's definition of "course of employment". The special issue, as framed, submitted an ultimate issue under the pleaded doctrine of respondeat superior. Appellant challenges the issue on the ground the issue should make reference to the time of the "shaking off" operation rather than at the time "of the accident in question" as the issue was quoted. The accident which caused Wigart's death occurred during the "shaking off" operation. In our opinion, the form of the issue was correct. It cannot be said the issue was confusing or misleading, nor was it a comment on the weight of the evidence. Le Sage v. Smith (Tex.Civ.App.) 145 S.W. 2d 308 (Dism.Judg.Corr.). Sears, Roebuck & Co. v. Jones (Tex.Civ.App.) 303 S.W.2d 432 (Ref.N.R.E.).

In connection with this special issue, the court instructed the jury: "By the term 'course of employment' is meant an act done in the furtherance of the employer's business and for the accomplishment of the object for which the employee was employed, whether on the employer's premises or elsewhere". This definition properly includes the elements of the term "course of employment" and properly applies the rule of respondeat superior. Texas Power & Light Co. v. Denson (Tex.Com.App.) 125 Tex. 383, 81 S.W.2d 36 (Opinion adopted). Sears, Roebuck & Co. v. Jones (supra).

By Special Issue No. 8 the trial court inquired: "Do you find from a preponderance of the evidence that on the occasion in question Chester W. Britain was not a spe-

cial or loaned employee of Boman-Chase?" Appellant urges error in the submission of this issue for the reason it was too broad and general and did not limit the inquiry to the unloading operation. Appellant's requested issue so limited the right of control to the particular operation but the requested issue was refused. In effect, the objections here stated are the same that were urged to Special Issue No. 1 previously discussed. We are of the opinion the issue as submitted was substantially correct for the reasons previously stated in our discussions of Special Issue No. 1.

In connection with Special Issue No. 8 the trial court gave the following instruction:

"By the term 'special or loaned employee', as used herein, is meant a person who, though in the general employ of another company, is turned over to a second company to assist in the performance of the second company's employment and in doing and performing or assisting in the performance of the second company's employment, the employee in the general employment of another becomes subject to the control, supervision or direction of the second company to whom he is turned over, concerning all the details of the particular work being performed and consents to such control, supervision or direction by the second company.

"You are instructed that a transfer of control can be accomplished through implication arising from the circumstances of work done and to be done as well as by express words."

Substantially the same definition was used in Shell Oil Co. v. Reinhart, 375 S.W.2d 717 (Tex.Sup.). The instruction given contains the essential elements of a special or loaned employee relationship. Appellant's object that the explanation directed that the borrowing employer must have control of all of the details of the work and that the employee must consent to this control by the borrowing employer. It is true that there are cases which hold that an employee may

become another's servant as to some acts and not as to others. Hilgenberg v. Elam, 145 Tex. 437, 198 S.W.2d 94. However, we do not think such a rule renders the instruction given here erroneous. The language "concerning all the details of the particular work being performed" does not lend itself to the same meaning urged by appellant. The "consent" referred to in the definition refers to the lending employer and not to the loaned employee. We therefore hold the special issue and accompanying instructions are substantially correct. Appellant has cited no authorities and we have found none which hold to the contrary.

Appellant next contends there is no evidence and insufficient evidence to support the jury finding in Special Issue No. 2 that Britain was negligent in slackening the winch line. In deciding these questions we will adhere to the applicable rules set out in In re King's Estate, 150 Tex. 662, 244 S.W. 2d 660. In passing upon the "no evidence" point we consider only the evidence most favorable to the verdict and disregard the evidence to the contrary. Britain was operating the truck and its winch. After the truck had been spotted and the "shaking off" operation begun, the chains securing the welding shed on the truck had been previously removed. The only thing securing the shed on the trailer were the metal pins inserted along the sides of the trailer and the winch line. Both Britain and Miller testified the wind was blowing rather strongly. Britain testified the wind "at times it would blow real hard gusts; and then it would be a steady wind and blow at gusts * * *" He stated he could feel the wind and "it would just shake the whole truck". These conditions existed during the "shaking off" operation and when Britain had slacked off the winch line two or three feet. It was during this time a gust of wind blew the shed from the trailer. Claude Robinson, owner of appellant company, testified he would not expect one of his drivers to slack off the winch line without a signal to do so. It is uncontradicted Britain

did not unspool on Wigart's signal. He did this on his own volition. The truck was not moving when the shed slid off and Britain was not certain of the whereabouts of Wigart and Miller as the shed blocked his view. We believe there was probative evidence to support the jury verdict.

Miller had removed the pin on the back left side of the trailer and he testified Wigart seemed to be having difficulty removing the pin on the right side. However, the record does not show Britain was aware of this. Britain testified the truck was at a standstill and he was waiting for a clear signal from Wigart to again move the truck backward. While so waiting, the winch line was unspooled. Mr. Robinson testified he would not expect a driver to slack off the winch line unless signaled. He testified further the driver would continue without further signals. However, this was contrary to Britain's stated intention on the particular occasion. The evidence is substantially uncontradicted. The most apparent differences are the emphasis and interpretations placed on the evidence by the respective parties. The jury accepted appellees' version of the evidence. We cannot say the jury verdict is so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust.

■ Appellant further contends Special Issue No. 2 is not supported by the pleadings and urges error in that the issue predicates Britain's action in slackening the winch line under "the circumstances then prevailing". Appellee pleaded the appellant was negligent "in that defendant failed to keep a proper lookout for decedent, William Robert Wigart, in loosening a winch line on defendant's truck at a time when defendant's agent, servant and/or employee knew or should have known, that decedent, William Robert Wigart, was in the vicinity of the rear corner of defendant's truck * * *" Appellant contends the allegation related to lookout and not to the slackening of the winch line. The wording of the allegation may be improved upon but we

think the pleadings do support the submission of the issue. It placed appellant on notice as to the facts relied upon to show negligence on the part of Britain. Appellee's whole case was tried upon the theory that Britain was negligent in unspooling the winch line under the conditions and circumstances present immediately prior to the fatal injury.

■ Appellant also challenges the evidence to support the foreseeability of proximate cause of Britain's alleged negligent act. The courts have allowed juries broad latitude to infer proximate cause from circumstances surrounding an accident. J. Weingarten, Inc. v. Brockman (Tex.Com.App.) 134 Tex. 451, 135 S.W.2d 698 (Opinion adopted). Houston Natural Gas Corp. v. Pearce (Tex.Civ.App.) 311 S.W.2d 899 (Ref.N.R.E.). To render a negligent act a "proximate cause" of an injury, the precise manner of the occurrence need not have been reasonably foreseen; but if consequences follow unbroken sequence, the fact the wrongdoer at the time of his original negligence might have foreseen, by the exercise of reasonable care, that a similar injury might result from such negligence, is sufficient to render such act a proximate cause. Southwestern Greyhound Lines v. Wafer (Tex.Civ.App.) 208 S.W.2d 614 (Error Ref.). We conclude the evidence previously outlined is sufficient to support the finding of proximate cause.

■ Appellant takes the position that with the exception of the act of unspooling the winch line by Britain, there is no distinction between what Britain and Wigart knew or could have reasonably known as to the foreseeability of Wigart's fatal injury. The argument is that if the record does not support the findings of causation nor foreseeability as to Britain, the same conclusion must be reached as to Wigart. It follows, argues appellant, that if the record charges Britain with causation and foreseeableness of his acts, the same conclusion must be reached as to Wigart. If this be so, appellant contends,

the defenses of no duty and volenti become applicable and present a defense to appellees' cause of action. In our opinion appellant's novel and resourceful contention is without merit. Where the assumed risk defenses of "no duty" and volenti are raised, the duty of the defendant is to exercise ordinary care to make the conditions of the premises or instrumentality reasonably safe or to warn the invitee. Ellis v. Moore, 401 S.W.2d 789 (Tex.Sup.) For the "no duty" defense to be sustained it must be shown the danger was open and obvious which the invitee knew or is charged with such knowledge. The jury found the danger was not open and obvious. It was not shown the instrumentality, the slackened winch line, which permitted the shed to slip off was known to Wigart. It is uncontradicted Wigart had not given Britain a signal to again proceed with the "shaking off". There being evidence to support this jury finding the defense of "no duty" cannot be invoked.

 Volenti is an affirmative defense whereby a plaintiff cannot recover from injuries received when he voluntarily exposed himself to a known and appreciated danger. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup.). The jury found Wigart did not know and appreciate "that he might sustain injury in the very manner in which he did sustain his fatal injury". Knowledge and appreciation of the dangerous condition or activity are essential requirements of the defense of volenti. J. & W. Corporation v. Ball, 414 S.W.2d 143 (Tex.Sup.). The voluntary exposure requirement was not submitted to the jury. This record does not support the affirmative defense of volenti.

██ Appellant asserts there is no evidence and insufficient evidence to support the jury finding a gust of wind was not the sole proximate cause of Wigart's death. The testimony concerning this issue has been set out at some length in connection with another point of error previously discussed. We see no need to repeat it here. We simply reiterate there was sufficient evidence to support this jury finding.

 The appellant next complains of the refusal of the trial court to submit certain requested special issues. These include: (1) an issue inquiring as to Wigart's negligence in failing to utilize the other pins available before removing the pin in question; (2) an issue inquiring as to Wigart's negligence in removing the pin while the wind was gusting; (3) an inquiry as to Wigart's negligence in placing himself in a position where he could be struck by the shed; (5) an issue inquiring if the gust of wind, together with the removal of the pin was a sole proximate cause. Appellant acknowledges that the trial court submitted two of the five alleged acts of negligence on the part of Wigart, but insists that the three requested issues submitted separate and independent defensive theories and should have been submitted. We cannot agree. The court submitted Special Issue No. 4b inquiring if Wigart's act of removing the pin "under the circumstances then prevailing" was negligence. The jury answered in the negative. There was no evidence the utilization of other pins prior to removing the rear pin would have prevented the shed from slipping from the trailer. We think the ultimate issue was properly submitted. Rule 279, Texas Rules of Civil Procedure. The requested issue inquiring if Wigart was negligent in placing himself in a position where he could be struck is not an ultimate issue in the light of the issues actually submitted. The jury found the danger was not open and obvious; and that Wigart did not know and appreciate the dangerous condition. An affirmative answer to the requested issue would have been in conflict with the above findings. In addition, the jury found Wigart did not fail to keep a proper lookout. The requested issue is related to the lookout issue submitted. The requested issue inquiring if a gust of wind, together with the removal of the pin was not the sole proximate

cause of Wigart's death was properly refused. Several acts claiming to be the sole proximate cause should not be submitted in one issue. Sproles v. Rosen, 126 Tex. 51, 84 S.W.2d 1001. Thompson v. Robbins, 157 Tex. 463, 304 S.W.2d 111. Appellant's points of error 32–35 were overruled.

Numerous objections are leveled to Special Issue No. 3, the damage issue, and the instructions given with it. The court's instruction in connection with the damage issue reads in full:

"In connection with the above issue and your answer thereto you are instructed that you can only consider the pecuniary loss, if any, sustained by each plaintiff, and you cannot allow plaintiffs anything by reason of consolation for the death of William Robert Wigart, or for any sorrow, anguish, or grief suffered by these plaintiffs as a result of his death.

"By pecuniary loss, if any, sustained by Helen O. Wigart, surviving wife of William Robert Wigart, is meant that you may take into consideration loss of maintenance and support, if any, services, if any, contributions from the earnings of William Robert Wigart, if any, and care and counsel, experience, knowledge and judgment in managing her affairs, his personal attention, protection and assistance, if any, that the said Helen O. Wigart would in all probability have received from the said William Robert Wigart, during his lifetime, had he lived.

"By pecuniary loss, if any, sustained by Kim Edwin Wigart and William Franklin Wigart, minor children of the said William Robert Wigart, deceased, is meant that you may take into consideration loss or maintenance, support, value of services, if any, which deceased would have rendered in training and educating of these children; care, counsel and advice, moral advice, nurture, and training, if any, of these children, the said Kim Edwin Wigart and William Franklin Wigart, would in all reasonable probability have received from the said William Robert Wigart, during the minority of each of the said minors, had he lived.

"By pecuniary loss, if any, sustained by the plaintiff, Larry Dean Wigart, is meant loss of maintenance and support, if any, during the minority of said minor."

It is argued the charge did not exclude loss for society, affection and companionship; that the instruction permitted recovery for both "care" and "personal attention, protection and assistance" permitting double recovery for both the wife and children; that "counsel and advice" and "training" were treated as separate elements; that "care" was used twice as an element of damages; that "maintenance and support" overlap "nurture and care"; and that the instruction constituted a comment on the weight of the evidence through failure to interpose the precautionary term "if any" to separate the damage items. When the language of the instruction as a whole is considered, the absence of the exclusion "society, affection and companionship" is not erroneous. The court instructed the jury "you can only consider the pecuniary loss, if any, sustained * * * and you cannot allow plaintiffs anything by way of consolation for the death * * * or for any sorrow, anguish or grief sustained as a result of his death." The language of the instruction contains the proper exclusion when it is read in connection with the instructions as a whole. Minor children may recover the value of services which a deceased father, in reasonable probability, would have rendered to them in "training, advice and educating them". Continental Bus Systems, Inc. v. Biggers (Tex.Civ. App.) 322 S.W.2d 1 (Ref. N.R.E.). Appellant Robinson strongly relies on International & G. N. Ry. Co. v. McVey, 99 Tex. 28, 87 S.W. 328 as authority for the alleged error in omitting the exclusion of the loss of "society, affection and companionship". The general rule in a wrongful death case is that the charge should expressly exclude from the jury consideration the elements of

grief, loss and society, mental pain and anguish. Gulf, C. & S. F. Ry. Co. v. Farmer, 102 Tex. 235, 115 S.W. 260. Burlington-Rock Island Ry. Co. v. Ellison (Tex.Civ. App.) 134 S.W.2d 306 (Writ Ref.); 17 Tex. Jur.2d, Death by Wrongful Act, Section 127. Generally, when the court charges the proper measure of damages and excludes any allowance for loss of companionship or as a solace for grief, the charge is affirmatively erroneous, but this rule is applicable only where the measure of damages as submitted, including the exclusions, is broad enough to include elements of damages complained of by the objections. Gillette Motor Transport v. Blair (Tex.Civ.App.) 136 S.W.2d 656 (Dismissed Judg.Corr.). Under this record we do not think the charge is subject to the objections made. Plaintiffs' recovery was expressly limited to "pecuniary loss if any" and the court excluded the jury's consideration of "consolation * * * or for sorrow, anguish or grief" suffered by plaintiffs as a result of Wigart's death. We find no reversible error in connection with the above instruction. Rule 434, Texas Rules of Civil Procedure.

■■■ Appellant further urges the instructions were calculated to allow a double recovery for both the wife and children. This is based on the use of the words "care" and "personal protection and assistance" in referring to the wife; and the argument is these are separate items of damages. As to the children's permissive recovery appellant complains of use of the term "care and advice", "training" and "counsel and advice and moral advice"; that "care" was used twice; and the assertion "maintenance and support" overlapped "nurture and care". Where the language of an instruction did not mislead a reasonably intelligent jury into allowing compensation twice for the same loss, judgment will not be reversed on such grounds. Southwestern Bell Telephone Co. v. Ferris (Tex.Civ.App.) 89 S.W. 2d 229 (Error Dism.). McClung Construction Co. v. Muncy (Tex.Civ.App.) 65 S.W. 2d 786 (Error Dism.). The words and phrases complained of are of common usage and their meanings are readily understood. We do not belive the instructions were calculated to mislead the jury. There is no indication they did. No reversible error is presented.

■■■ Appellant also points out the instruction to the damages issue was on the weight of the evidence in that there was an assumption certain elements of damages actually existed because of the absence of the phrase "if any" after each element of damages enumerated. This contention is without merit. The explanatory instruction contained the phrase "if any" eight times. It followed each definition of "pecuniary loss" in referring to both the wife and children. The phrase follows either a single element of damages or a series of elements of damages the jury was authorized to consider. There was evidence to support the submission of these elements and we do not think the absence of the phrase after each separate element of damages constitutes a comment on the weight of the evidence. It is not misleading. Each element is somewhat related. We conclude this portion of the charge does not present reversible error. See Houston Transit Co. v. Felder, 146 Tex. 428, 208 S.W.2d 880.

■■■ Appellant next complains of the admission into evidence of the Wigart income tax returns for the years 1952–1963. In compliance with appellant's counsel's request, Mrs. Wigart submitted these tax returns to them prior to the trial. As a witness, Mrs. Wigart identified the tax returns. Preceding her testimony as to the deceased's earnings for each of the years involved, she was referred to the returns "by way of refreshing your recollection". She then testified to the amounts reflected in each return. Prior to this testimony and prior to the introduction of the returns into evidence, appellant's counsel offered the objection the "income tax return itself is inadmissible as being hearsay and self-serving and it cannot, by indirection, be placed into evidence under the guise of using it to refresh a witness' memory." The general

**486**

rule is that any writing may be used to revive a present recollection. Texas Law of Evidence, McCormick & Ray, 2d edition, Section 549, and cases there cited. Income tax returns are subject to discovery to the extent of relevancy and materiality. Crane v. Tunks, 160 Tex. 182, 328 S.W.2d 434. Fort Worth Lloyds v. Hale (Tex.Civ. App.) 405 S.W.2d 639 (Ref. N.R.E.). Income tax returns of a plaintiff in a personal injury case are relevant and material to his prior earning capacity. Wigart's earning capacity is a material issue in this case. Martin v. Jenkins (Tex.Civ.App.) 381 S.W. 2d 115 (Ref. N.R.E.); Tex., 384 S.W.2d 123. Under the state of this record, we are of the opinion the objection that the tax returns were hearsay and self-serving were properly overruled. Subsequently to the introduction of the returns into evidence and after the conclusion of the examination of Mrs. Wigart, appellant's counsel offered an additional objection to the admissibility of the tax returns on the grounds their "accuracy and integrity" had not been established. This latter objection was not timely made even though the trial judge permitted it to be made. It is well settled that an objection to the admission of evidence must be made when the evidence is offered and not after it had been introduced. South Texas Electric Cooperative, Inc. v. Ermis (Tex.Civ.App.) 396 S.W.2d 955. 3 Tex. Jur.2d 392, Appeal and Error—Civil, Section 122. See McCormick & Ray, Texas Law of Evidence, Section 23. We conclude the admission of the tax returns did not constitute reversible error. Rule 434, T.R. C.P.

Appellant further challenges the admissibility of the testimony of witness Womack on the subject of custom and usage in the oil field trucking business. It is undisputed Womack qualified as an expert in the oil field trucking business. His testimony, in effect, was a truck driver, in unloading operations similar to the one Britain was engaged in would not slack off on the winch line without a signal. Evidence of a custom or a usage is admissible to tend to prove what an ordinarily prudent man would do under similar circumstances. Such evidence is not conclusive on the issue of negligence. Honea v. Coca Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968, 160 A.L.R. 1445. Mr. Robinson, owner of appellant company, was also questioned concerning the same custom. His testimony contradicted that of witness Womack. It was for the jury to weigh the testimony in considering all special issues dealing with the alleged negligent acts of Britain.

Witness Miller was not permitted to testify that in his opinion the truck itself had nothing to do with the shed slipping off the truck; but that he believed the wind "blowed it off". It was not shown Miller was qualified to express such an opinion. Britain, the truck driver, was examined at length concerning the wind at the time the accident occurred. In view of these circumstances, the refusal to admit the testimony of Miller was not reversible error.

We have carefully examined all of appellant's points of error and have concluded they do not present reversible error.

The judgment of the trial court is affirmed.