Virgil **PUTNAM**, Appellant,

v.

Hattie **PANNELL**, Appellee.

No. 5325.

Court of Civil Appeals of Texas,
Waco.

March 21, 1974.

John R. Bryant, Dallas, for appellant.

John J. Fisher and Burt Berry, Dallas,
for appellee.

OPINION

JAMES, Justice.

This is a suit over an oral employment
contract. Plaintiff-Appellee Mrs. Hattie
Pannell sued Defendant-Appellant Virgil
Putnam on a debt claimed to be due and
owing because of personal services as a li-
censed vocational nurse alleged to be ren-
dered by Mrs. Pannell under oral contract
of employment with Mr. Putnam. Trial
was to a jury which answered the perti-
nent special issues in favor of Plaintiff-
Appellee Mrs. Pannell. Judgment was ren-
dered in accordance with the verdict in fa-
vor of Mrs. Pannell for $9013.00 plus in-
terest and costs, from which Defendant-
Appellant Putnam appeals to this court on
four points of error. We overrule Appel-
lant's points and affirm the trial court's
judgment.

The trial court submitted twelve special
issues to the jury, nine of which the jury

answered, all in Mrs. Pannell's favor. Three of the issues, Nos. 7, 8 and 11 were not answered by the jury, and no answer was required since these three issues were conditionally submitted. The nine pertinent issues which were answered by the jury are summarized as follows:

(1) Plaintiff Mrs. Pannell went to work for the Defendant at Oak Cliff Boarding Home in Dallas, Texas on June 9, 1969;

(2) Her beginning wage rate was $18.00 per day;

(3) Her wage rate was changed at some date after she began her employment;

(4) Towit, on August 1, 1969;

(5) Her changed wage rate was $36.00 per day;

(6) Her wage rate was not changed any more after August 1, 1969;

(9) She worked for Defendant 51 days at the beginning wage rate ($18.00 per day);

(10) She worked for Defendant 258 days at the changed wage rate ($36.00 per day);

(12) Defendant actually paid Plaintiff $1193.00 in wages during her period of employment.

Based upon the mathematical calculations of the verdict, the trial court entered judgment in favor of the Plaintiff for $9013.00, interest and costs.

Defendant-Appellant Putnam by his second, third, and fourth points of error asserts that the jury's answers to Special Issues Numbers 1, 2, 4, 5, 9, 10, and 12 are so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust. We overrule these contentions.

For all practical purposes, testimony which had bearing upon the above-numbered special issues came from either Mrs. Pannell or Mr. Putnam personally, and their testimony was sharply conflicting. Without detailing their respective versions, suffice it to say that there is direct testimony in the record from Mrs. Pannell to support the jury's answers to Special Issues 1, 2, 4, 5, 9, and 10. Mr. Putnam's testimony was vastly different, in that he testified that Mrs. Pannell's employment did not begin until August, 1969, at which time she started to work at $50.00 per week; that sometime after Christmas 1969 he raised her wages to $250.00 per month, at which time he began to pay her twice a month instead of weekly; that in "April or May" 1970 she went on vacation and at her return he raised her wages to $300.00 per month, and that her employment was terminated by him on the "fourth or fifth" day of May 1970. He testified that he paid her at first in cash, and later by checks.

■ With reference to Special Issue No. 12, wherein the jury was asked how much money Mr. Putnam actually paid Mrs. Pannell in wages, the jury answered $1193.00. Mrs. Pannell testified that Mr. Putnam paid her $1180.00 in all, consisting of four different cash payments on different dates totalling $580.00 plus four checks totalling $600.00 (dated between April 2, 1970 to May 15, 1970) as shown by Plaintiff's Exhibits 1, 1A, 1B, and 1C in evidence. Plaintiff's pleadings alleged that Defendant had paid her $1193.02, between June 9, 1969 and May 15, 1970, the period of time she contended that she worked for Defendant. This constituted a judicial admission on her part, irrespective of her testimony. Masten v. Masten (Ft. Worth CA 1942) 165 S.W.2d 225, error refused.

Mr. Putnam's testimony concerning what he actually paid Mrs. Pannell is vague as to the exact amount. He identified the four checks hereinabove referred to (Plaintiff's Exhibits 1, 1A, 1B, and 1C) totalling $600.00, and in addition thereto testified that he gave her a check for $80.00 to help out her son-in-law (who was about to have his car repossessed). Additionally,

he gave her another check for $35.00 for her to pay a doctor for medical services, and testified that he paid her part of the time in cash. However, he did not say how much he paid her in cash, and never obtained any receipts from her for any such cash payments.

■■ From this state of the record, it is apparent that the testimony is a "swearing match" between the Plaintiff and Defendant. All the jury's answers to the special issues in question are well within the range of the testimony, and we cannot say such findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. In re King's Estate (1951) 150 Tex. 662, 244 S.W.2d 660. It was the jury's prerogative to resolve conflicts in the evidence, and the jury decided to resolve these conflicts in favor of Plaintiff-Appellee Mrs. Pannell.

In Muro v. Houston Fire and Casualty Insurance Co. (San Antonio CA 1959) 329 S.W.2d 326, error refused NRE, in an opinion by Justice Pope, the following language is contained at page 331:

"What may jurors do with conflicting evidence before them? They may disbelieve a witness though he is neither impeached nor contradicted. Cheatham v. Riddle, 12 Tex. 112. They may believe one witness and disbelieve others. Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561. They may resolve conflicts and inconsistencies in the testimony of any one witness as well as the testimony of different witnesses. Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792. They are not required to depend upon the evidence from a single source. Texas & N. O. Ry. Co. v. New, Tex.Civ.App., 95 S.W.2d 170, 174."

Also see the latest expression from this court on this subject in Blackmon v. Piggly Wiggly Corporation (Waco CA 1972) 485 S.W.2d 381, error refused NRE. Appellant's points two, three and four are accordingly overruled.

Appellant's point one is worded as follows: "The court erred in permitting Appellee's use of the 'yellow piece of paper' in her testimony." We overrule this point.

The "yellow piece of paper" consisted of notations written by Plaintiff-Appellee on a yellow pad which she used to refresh her memory concerning the number of days she worked at the respective rates of pay she received. The "yellow piece of paper" was not offered in evidence and is not before us; therefore, we have no way of knowing exactly what it consisted of. Mrs. Pannell did testify that she prepared these notations on the day before the trial, and had taken the information from data she had previously written up immediately after May 15, 1970, the date of termination of her employment. She testified that immediately after her termination she checked a calendar from June 9, 1969 through May 15, 1970, and counted the number of days she worked at the rate of $18.00 per day and then counted the number of days she worked at the rate of $36.00 per day.

In effect, she testified that she worked 51 days at $18.00 per day between June 9, 1969 and August 1, 1969; and worked 258 days at $36.00 per day between August 1, 1969 and May 15, 1970.

■ Plaintiff-Appellee's use of the "yellow piece of paper" to refresh her present recollection while on the witness stand presented no error. The general rule is that any writing may be used to revive a present recollection. Flato v. Brod (Tex.Sup.Ct.1872) 37 Tex. 734; Houston & T. C. R. R. Co. v. Burke (Tex.Sup.Ct. 1881) 55 Tex. 323 at 342. Also see McCormick and Ray, Texas Law of Evidence, Second Edition, Section 549, and cases therein cited.

Finding no error in the trial court's judgment, we accordingly affirm same.

Affirmed.