Royce Dale **DECKER** and Sanders Tractor Company, Appellants,

v.

**COMMERCIAL CREDIT EQUIPMENT CORPORATION, Appellee.**

No. 8390.

Court of Civil Appeals of Texas, Texarkana.

Sept. 7, 1976.

Garry Lewellen, McMillan & Lewellen, Joseph A. Chandler, Chandler & Chandler, Stephenville, for appellants.

Larry F. Amerine, Biggers, Lloyd, Biggers, Beasley & Amerine, Dallas, for appellee.

CORNELIUS, Justice.

Appellee, Commercial Credit Equipment Corporation (herein called CCEC), filed suit against Sanders Tractor Company and Royce Dale Decker to recover the balance due under a purchase security agreement executed by Decker to finance certain farm equipment he purchased from Sanders. Sanders had assigned the purchase security agreement to CCEC, and Decker later failed to make the required installments. CCEC alleged that on Decker's default the equipment was repossessed and sold, and that by the terms of the assignment of the purchase security agreement, as well as the terms of a special financing agreement executed between Sanders and CCEC, Sanders was obligated to pay the difference between the amount realized from the sale and the amount Decker owed under the purchase security agreement. In a trial to the court judgment was rendered in CCEC's favor for $5,012.83, together with interest and attorney's fees.

The purchase security agreement contained two forms of assignment, either of

which could be used by Sanders in assigning it to CCEC. Form number one was a "Nonrecourse" form which provided that the assignment would be ". . . pursuant to the terms of agreements between CCEC and us (Sanders) and is subject to our undertakings to CCEC contained therein . . . ." (parenthesis supplied). The special financing agreement, which was executed prior to the date of the purchase security agreement, provided in part as follows:

> "On Instruments acquired by you (CCEC) hereunder in any one calendar year, we (Sanders) . . . shall repurchase, when called upon to do so, *a maximum of the first three (3)* repossessions of Equipment covered by such Instruments . . . . (parenthesis supplied)
>
>     .     .     .     .     .
>
> ". . . if you should repossess or come into possession of any Equipment, we will repurchase the same . . . immediately upon demand . . . and will pay you therefor, in cash, the total unpaid balance owing on the related Instrument . . . If we do not repurchase such repossessed Equipment . . . you may sell such Equipment at public or private sale . . . and we will pay you the difference between the net amount realized from such sale and the repurchase price provided for above . . .
>
>     .     .     .     .     .
>
> ". . . you may store repossessed Equipment on our premises . . . and our possession of such Equipment shall be merely *as bailee* . . . ."

Assignment form number two of the purchase security agreement imposed upon Sanders essentially the same obligations as did the special financing agreement. It is not clear whether assignment form number one or number two of the purchase security agreement was used when the instrument was transferred from Sanders to CCEC, but for reasons later discussed, that uncertainty is not deemed material to the disposition of this cause.

Appellants contend (1) there is no evidence that CCEC repossessed the equipment and tendered it to Sanders whereupon Sanders failed to repurchase same; (2) there is insufficient evidence to show that the number of repossessions for the year in question was within the number for which Sanders was liable; and, (3) it was error to admit the special financing agreement into evidence. We overrule these points and affirm the judgment.

## I.

■ Neither the purchase security agreement nor the special financing agreement defined the term "repossession." An examination of the Statement of Facts indicates that CCEC and the dealer Sanders worked under a co-operative arrangement for the recovery of equipment when default was made in the payment therefor. Sometimes CCEC would repossess, sometimes the dealer would repossess, and on occasion the purchaser would voluntarily return the equipment to the dealer. In each case, the transaction was considered as a repossession and would be entered as such in CCEC's log maintained for that purpose. Moreover, the special financing agreement obligated Sanders to perform if CCEC "should repossess or *come into possession*" of any equipment. Considering these facts and the course of dealing between the parties, it is clear that equipment was "repossessed" for the purposes of the agreements whether the return of that equipment was effected by CCEC, by Sanders or by voluntary relinquishment of possession by the purchaser. The evidence shows that Mr. Sanders picked up the equipment in question here from Mr. Decker after default was made. Decker's testimony, as well as the interrogatories introduced in evidence, referred to the transaction as a "repossession." In addition, the district manager of CCEC, on being asked if CCEC tendered the property to Sanders, answered that he didn't know if the equipment was returned voluntarily or if their "man" repossessed it, but that Sanders got the equipment back in any event. He also testified that CCEC made demand upon Sanders to pay the remaining

balance on the account. Mr. Decker's testimony and the interrogatories both referred to a "sale" of the equipment. Under all of these circumstances, we find there was evidence that the equipment was repossessed and sold, and that demand was made by CCEC of Sanders to pay the deficiency. Whether assignment form number one or number two was used becomes immaterial, because the procedures on default were essentially the same. Form number two provided specifically for the procedure outlined above, and form number one referred to the special financing agreement which in turn contained the same procedure.

## II.

The special financing agreement obligated Sanders to repurchase or pay for equipment involved in ". . . *a maximum of the first three (3)* repossessions . . . ." Appellants contend there was insufficient evidence that less than three repossessions had been made in the year in question, and that consequently Sanders' obligation under the agreement was not established. CCEC maintains that the limit of repossessions was an affirmative defense, and that appellants had the burden to establish their lack of liability by virtue of that provision; or that in any event, there was sufficient evidence that only one repossession was had in the year in question.

The general rule is that the burden of proving the happening of a contingency which would discharge a party from liability under a contract is upon the party who seeks to avoid liability upon that ground. 13 Tex.Jur.2d, Contracts, Sec. 390, p. 668 (1960). But the plaintiff has the burden to establish that the obligation he seeks to enforce is within the *general subject matter* of the contract. We believe the latter rule is applicable in this case. The reference to three repossessions is not a condition subsequent by which Sanders may be relieved of a duty; it is the very *subject matter* of the contract. Sanders agreed to purchase *the first three* repossessions. CCEC therefore had the burden to establish that the deficiency it contended Sanders

was obligated to assume was the result of one of the first three repossessions. We further find that CCEC discharged that burden. Mr. Ferguson, the general manager for CCEC, testified there had only been one repossession. He so testified only after consulting the company's repossession log, and appellants contend his testimony was hearsay and without probative force, but we find that such testimony was admissible and competent under the rules of evidence relating to past recollection. The requirements for the use of a memorandum to refresh one's past recollection are: (1) the witness has no present recollection, but when the events were fresh a correct memorandum was made; (2) the witness must be able to guarantee the correctness of the memorandum. The usual method is for the witness to state that he remembers that when he made or saw the memorandum he knew it to be correct. But other methods of verification are permissible. He may rest his verification on a general course of business or a habit of keeping correct records. All that is required is that the correctness of the memorandum be guaranteed. It is not necessary that the memorandum have been prepared by the witness himself. 1 McCormick & Ray, Texas Evidence, Secs. 541–544, pp. 438–442 (2d ed. 1956); 23 Tex.Jur.2d, Evidence, Sec. 318, p. 459 (1961). When the witness identifies the memorandum and guarantees its correctness, both the writing and his testimony are admissible in evidence. *Wood v. State,* 511 S.W.2d 37 (Tex.Cr.App.1974); 1 McCormick & Ray, Texas Evidence, Sec. 547, p. 443 (2d ed. 1956). In this case, although Ferguson did not make the log himself, he testified it was made in the regular course of business by those under his direction and supervision, and he attested to its accuracy. His testimony was therefore admissible and competent under the rules above noted.

## III.

Appellants then assert that it was error to admit the special financing agreement into evidence. It is contended that such agreement was inadmissible because it

tended to contradict or alter the terms of the purchase security agreement. We cannot agree. The special financing agreement was executed prior to the purchase security agreement, and it anticipated and referred to those purchase security agreements which would in the future be assigned by Sanders to CCEC. The purchase security agreement in question expressly provided that it was made pursuant to the terms of agreements between the parties, and was subject to the undertakings by Sanders to CCEC which were contained in those agreements. Thus, neither the special financing agreement nor the purchase security agreement altered or contradicted the terms of the other; rather, they complemented each other. Both were admissible in evidence and could be considered together. The extrinsic evidence rule is not violated in such circumstances. 2 McCor-

mick & Ray, Texas Evidence, Sec. 1611, p. 451 (2d ed. 1956). Nor was the special financing agreement inadmissible because it was signed only by Sanders. It was accepted by CCEC, and the parties acted pursuant to its terms. It thereby became a binding agreement between them. *Clegg v. Brannon,* 111 Tex. 367, 234 S.W. 1076 (1921); *Heusinger Hardware Co. v. First National Bank,* 367 S.W.2d 710 (Tex.Civ.App. Eastland 1963, writ ref'd n. r. e.); 13 Tex.Jur.2d, Contracts, Sec. 76, p. 221 (1960).

We find no reversible error. The judgment of the trial court is affirmed.