AQUAMARINE ASSOCIATES, A Texas
Partnership, Petitioner,

v.

BURTON SHIPYARD, INC. et
al., Respondent.

No. C–1516.

Supreme Court of Texas.

Oct. 19, 1983.

Rehearing Denied Dec. 7, 1983.

Wright & Patton, William E. Wright, Houston, for petitioner.

Mehaffy, Weber, Keith & Gonsoulin, O.J. Weber, Brian Davis and Arthur R. Almquist, Beaumont, for respondent.

WALLACE, Justice.

This is a suit for breach of contract. Burton Shipyard, Inc. agreed to construct four ocean-going vessels for Aquamarine Associates. When Burton breached the contract, Aquamarine elected to "cover" by purchasing substitute vessels and then sued Burton and its president, J.C. Garner, for the difference between its cost of cover and the contract price. TEX.BUS. & COM. CODE ANN. § 2.712 (Tex.UCC) (Vernon 1968). The competency of the evidence establishing Aquamarine's cost of cover is at issue. The trial court disregarded certain jury answers and limited Aquamarine's recovery to the difference between the original contract price and Aquamarine's first contract for substitute vessels. The court of appeals affirmed the judgment of the trial court, holding that Aquamarine's evidence of expenses incurred in purchasing substitute vessels beyond its first contract of cover was hearsay. 645 S.W.2d 477. We affirm the judgment of the court of appeals.

In November of 1972, Aquamarine Associates, a partnership comprised of Tom Gilbert, Ronald Cuenod and James Chadwick, contracted with Burton Shipyard, Inc. for

the construction of four tugboats. Burton built one tugboat but defaulted on the other three, referred to as hulls 505, 516 and 517.

Aquamarine then turned to Texas Maritime Industries ("TMI") and in March of 1974, contracted for the completion of hulls 505, 516 and 517 at an increased cost of approximately $700,000 over the Burton contract. TMI subsequently went bankrupt. Cuenod and Chadwick, two partners in Aquamarine, acquired the assets of TMI and changed its name to South Texas Shipyards ("STS"). STS contracted with Aquamarine in November of 1974, to complete hulls 505 and 516. Almost a year later, in September of 1975, STS and Aquamarine agreed on a contract covering hull 517. STS completed hulls 505 and 516 although they were delivered to Aquamarine late and over budget. STS did not complete hull 517. It was towed to Halter Marine in Mississippi for completion after Cuenod and Chadwick sold their interests in STS.

At issue is Aquamarine's reasonable cost of cover. When a seller breaches a contract, the buyer "... may 'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller." TEX.BUS. & COM.CODE ANN. § 2.712(a) (Tex.UCC) (Vernon 1968). Aquamarine contends that its reasonable cost in covering Burton's breach includes all expenses associated with the ultimate completions of hulls 505, 516 and 517.

Aquamarine's evidence of its actual cost of cover came from its president, Tom Gilbert. Gilbert testified from an exhibit chart prepared by Aquamarine's attorneys and introduced in evidence, without objection, as a summary of Aquamarine's business records. The figures on the chart were derived from an independent auditor's report of Aquamarine's records which had been prepared for a report to the Maritime Administration. From the auditor's figures Gilbert deducted certain expenses he thought inapplicable to Aquamarine's cost of cover. During the course of Gilbert's testimony, Aquamarine, at Burton's request, supplied the underlying records which purportedly supported Gilbert's testimony. This material was organized and reviewed by Burton, which in rebuttal presented its expert witness on Aquamarine's expenses.

Burton contends the TMI contract is the only competent evidence of Aquamarine's cost of cover. It argues that the remainder of Aquamarine's evidence consists of a summary chart of an independent auditor's report based upon records never shown to be admissible. Burton submits this is hearsay and is no evidence of Aquamarine's cost of cover. We agree.

■ In cases involving voluminous records, the trial court has discretion to relax the best evidence rule and allow the admission of summaries of the voluminous records. 2 R. Ray, TEXAS LAW OF EVIDENCE § 1578 (Texas Practice 3d ed. 1980). The party sponsoring the summary must, however, lay the proper predicate for its admission. *See,* Pope and Hampton, *Presenting and Excluding Evidence,* 9 TEX. TECH L.REV. 403, 430–31 (1978). In order to rely on summaries, the sponsoring party must demonstrate that the underlying records were voluminous, were made available to the opposing party for inspection and use in cross examination, and were admissible under the Texas Business Records Act, TEX.REV.CIV.STAT.ANN. art. 3737e, *Black Lake Pipe Line Co. v. Union Constr. Co.,* 538 S.W.2d 80 (Tex.1976). The Texas Business Records Act "... creates an exception to the hearsay rule and makes a 'memorandum or record of an act, event or condition ... competent evidence of the occurrence of the act or event or the existence of the condition' provided the identity and mode of preparation of the memorandum or record are established as provided therein." *Cooper Petroleum Co. v. LaGloria Oil and Gas Co.,* 436 S.W.2d 889, 891 (Tex. 1969).

■ The only evidence of the expenses incurred by Aquamarine in purchasing its cover was the summary chart prepared by Aquamarine's counsel from an independent audit of Aquamarine's records and the testimony of Tom Gilbert which was also based on that audit. The underlying business records, which purportedly were the basis of

the auditor's report which Gilbert testified was the basis of his summary, were not shown to be admissible. The summary and Gilbert's testimony are therefore hearsay. *Black Lake Pipe Line Co. v. Union Constr. Co., supra.* Prior to the adoption of Rule 802, Texas Rules of Evidence, (effective September 1, 1983), inadmissible hearsay would not support a judgment even when admitted without objection. *Texas Co. v. Lee,* 138 Tex. 167, 157 S.W.2d 628, 631 (1941); *Aetna Ins. Co. v. Klein,* 160 Tex. 61, 325 S.W.2d 376, 381 (1959).

The judgment of the court of appeals is affirmed.

ROBERTSON, SPEARS and KILGARLIN, JJ., dissent.

ROBERTSON, Justice, dissenting.

I respectfully dissent. The majority affirms the lower court's finding Aquamarine's only evidence of expenses incurred in purchasing substitute vessels is hearsay. The testimony excluded is that of Tom Gilbert, the managing and operating partner of Aquamarine. Gilbert while testifying asked to refer to several charts prepared by his lawyer from an independent auditor's report regarding the cost to cover. On *voir dire* Mr. Gilbert testified he had calculated the original figures used to prepare the audited financial statements. When asked if he could recall the numbers without the charts Gilbert replied he might make a mistake but offered to recalculate the numbers on the stand if necessary. Gilbert further testified he had an independent recollection of the matters on the charts.

In *Flato v. Brod & Hemmi,* 37 Tex. 734 (1873), this court held a witness should "be permitted to refer to any thing or fact he may choose in order to refresh his memory." *See also Putnam v. Pannell,* 507 S.W.2d 811 (Tex.Civ.App.—Waco 1974, no writ); *J.A. Robinson Sons, Inc. v. Wigart,* 420 S.W.2d 474, 486 (Tex.Civ.App.—Amarillo 1967) *rev'd on other grounds* 431 S.W.2d 327 (Tex.1968). The critical analysis of the testimony after allowing the witness to refresh his memory is whether he is able to testify of his own knowledge. *Lumpkin v. State,* 524 S.W.2d 302 (Tex.Cr.App.1975);

*Barnes v. State,* 634 S.W.2d 25 (Tex.App.—Beaumont 1982, no writ). If the witness has an independent recollection of the events the testimony is admissible. *Welch v. State,* 576 S.W.2d 638, 641 (Tex.Cr.App. 1979); *Wood v. State,* 511 S.W.2d 37 (Tex. Cr.App.1974); *S & S Wholesale Supply, Inc. v. Los Cedros, Inc.,* 628 S.W.2d 493 (Tex. App.—Corpus Christi 1982, no writ). 3 J. Wigmore, *Wigmore on Evidence* § 758 (2d ed. 1970); 1 R. Ray, *Texas Practice Law of Evidence* § 548 (9th ed. 1980). It is irrelevant the document or chart used to refresh the witness' testimony is not admissible. It is not the document but the recollection of the witness which is the evidence of the events in issue. *Ogrydziak v. Ogrydziak,* 614 S.W.2d 474 (Tex.Civ.App.—El Paso 1981, no writ). However, if the witness identifies the document used to refresh his memory and guarantees its accuracy both the document and his testimony may be properly admitted into evidence. *Wood v. State, supra; Decker v. Commercial Credit Equipment Corp.,* 540 S.W.2d 846 (Tex.Civ. App.—Texarkana 1976, no writ).

Mr. Gilbert testified on *voir dire* he had an independent recollection of the matters on the charts. In fact, the costs stated on the charts were first calculated by Gilbert although he did not prepare the charts. Gilbert, as his testimony reflects, was only using the charts as a means to help accurately recall the cost incurred of which he had personal knowledge.

It is improper under Texas law to exclude testimony as hearsay when a document, chart, or memorandum, even if not admissible, is used to refresh the present recollection of the witness. *Ogrydziak v. Ogrydziak, supra.* The testimony of Gilbert should be allowed to enter as evidence. Any complaints as to the accuracy of Gilbert's testimony should have gone to the weight and credibility of that testimony but total exclusion was improper. *S & S Wholesale Supply, Inc. v. Los Cedros, Inc., supra.*

SPEARS and KILGARLIN, JJ., join in this dissenting opinion.