Robin D. NEW d/b/a River City Auto Sales and William Pacheco d/b/a Pacheco's Motor Car Sales, Appellants,

v.

TEXAS COMMERCE BANK, NATIONAL ASSOCIATION, Appellee.

No. 03–97–00737–CV.

Court of Appeals of Texas, Austin.

June 18, 1998.

William B. Gammon, William B. Gammon, P.C., Austin, for appellant.

G. Alan Waldrop, Liddell, Sapp, Zivley, Hill & LaBoon, L.L.P., Austin, for appellee.

Before POWERS, KIDD and B.A. SMITH, JJ.

KIDD, Justice.

This appeal arises from a default judgment granted against appellants Robin New d/b/a River City Auto Sales ("New") and William Pacheco d/b/a Pacheco's Motor Car Sales ("Pacheco") in favor of appellee Texas Commerce Bank, National Association n/k/a Chase Bank of Texas, National Association ("TCB"). In two points of error, New and Pacheco assert that the trial court abused its discretion in awarding damages and attorneys' fees because: (1) no reporter's record of the default-judgment proceeding was made; (2) no evidentiary hearing was held pursuant to Texas Rule of Civil Procedure 243 to determine unliquidated damages; (3) the evidence was insufficient to support the default judgment; and (4) the pleadings do not support an award for actual damages. We will affirm in part and reverse and remand in part to determine TCB's unliquidated damages and attorneys' fees.

## BACKGROUND

New and Pacheco were used car dealers who operated separate businesses out of the same building. Allegedly, they participated in a fairly sophisticated check-kiting scheme to defraud TCB and Norwest Bank (not a party to this suit) by misrepresenting the amount of available funds in their respective checking accounts. Apparently, the two would "swap" automobile titles with each oth-er, writing large, lump-sum checks to cover the amount necessary to clear and deliver the vehicle's title to the customer.[1] However, no real titles or currency changed hands. Rather, New would write a check drawn from insufficient funds in his TCB account to Pacheco, who would then reciprocate with a check drawn from insufficient funds from his (Pacheco's) Norwest account. By "kiting" these checks between the two respective banks, New and Pacheco created the illusion that real, tangible money was changing hands. After at least eighteen months of perpetrating this scheme, the apparent balances in each of their checking accounts were grossly overinflated.

Norwest discovered this scheme on or about July 18, 1997, and insisted that Pacheco stop payment on all checks drawn from his Norwest account. Consequently, a large number of items deposited by New in his TCB account were returned bearing the notation "payment stopped." TCB charged these items as debits on New's account, resulting in a $729,510.96 overdraft or negative balance.

On July 25, 1997, TCB filed suit against New and Pacheco seeking damages for several causes of action including breach of contract, fraud, conspiracy to defraud, and violations of the civil theft statute. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 134.001–.005 (West 1997). The original petition also sought a temporary restraining order and a temporary injunction to enjoin New and Pacheco from taking further action to advance their check-kiting scheme. The temporary restraining order was immediately granted and the application for temporary injunction was set for a bench trial on October 6, 1997.

On August 18, 1997, after the time expired for New and Pacheco to file an answer to TCB's original petition, TCB filed a motion for default judgment. Attached to its motion for default judgment were two affidavits generally describing New and Pacheco's check-kiting scheme, and a third affidavit discussing attorneys' fees. The content of these affidavits is discussed in more detail below.

---

1. The parties referred to the amount necessary to clear and deliver the vehicle's title to the custom-er as the "floor plan" financing.

It is undisputed that no oral testimony was presented at the default-judgment proceeding.

After considering "the Motion for Default Judgment, all affidavits in support of the Motion, the pleadings and papers on file in this cause, the evidence presented and all other matters properly before the Court," the trial court awarded TCB $729,510.96 for actual damages and $30,000 for attorneys' fees. New and Pacheco timely filed a motion for new trial which was overruled on October 15, 1997. New and Pacheco appeal.

## DISCUSSION

In their first point of error, New and Pacheco argue that TCB's failure to make a reporter's record of the default-judgment proceeding constitutes reversible error. However, we believe that a careful reading of their point of error raises two other issues which we believe to be dispositive.[2] Specifically, we conclude that New and Pacheco have properly raised the issues of (1) whether the trial court properly considered "evidence" as required by Rule 243 of the Texas Rules of Civil Procedure in determining unliquidated damages; and (2) whether the "evidence," if properly considered, was competent and sufficient to support the trial court's judgment awarding TCB $729,510.96 for actual damages and $30,000 for attorneys' fees.

█ It is well settled that once a default judgment is taken against a non-answering defendant on an unliquidated claim, all allegations of fact set forth in the petition are deemed admitted, except the amount of damages. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex.1992); *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex.1984); *Stoner v. Thompson*, 578 S.W.2d 679, 684 (Tex.1979) (by failing to answer, defendant generally admits facts properly alleged in opponent's petition except with regard to unliquidated damages). Therefore, a court rendering a default judg-

ment on an unliquidated claim must hear evidence as to damages. *See* Tex.R. Civ. P. 243; *Heine*, 835 S.W.2d at 83; *Siddiqui v. West Bellfort Property Owners*, 819 S.W.2d 657, 659 (Tex.App.—El Paso 1991, no writ).

In the present cause, it is undisputed that TCB's claims are for unliquidated damages. Hence, this cause is governed by Rule 243 of the Texas Rules of Civil Procedure which provides:

> If the cause of action is unliquidated or be not proved by an instrument in writing, *the court shall hear evidence* as to damages and shall render judgment therefor, unless the defendant shall demand and be entitled to a trial by jury in which case the judgment by default shall be noted, a writ of inquiry awarded, and the cause entered on the jury docket.

Tex.R. Civ. P. 243 (emphasis added). New and Pacheco contend that contrary to this statutory mandate, the trial court did not "hear evidence as to damages." Specifically, New and Pacheco argue the following: it is undisputed that no oral testimony was taken at the default-judgment proceeding; the only "evidence" presented to the trial court at that proceeding were affidavits; therefore, because affidavits are not "evidence," no evidentiary hearing was held as required by Rule 243.

In response to this argument, TCB primarily relies on *Irlbeck v. John Deere Co.*, 714 S.W.2d 54, 57 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.), for the proposition that it is "entirely proper for the trial court to receive affidavit evidence supporting claims for unliquidated damages and attorneys' fees."

In *Irlbeck*, the defendant complained that a default judgment awarding unliquidated damages pursuant to a promissory note was wrongly taken against him without an evidentiary hearing. *Irlbeck*, 714 S.W.2d at 57. Specifically, the defendant argued that while the note, which was attached to the plaintiff's

**2.** TCB argues that New and Pacheco's first point of error presents only the question of whether a reporter's record is needed to support the award of damages in a default-judgment proceeding. We disagree with TCB's narrow reading of this point of error. The arguments presented by New and Pacheco regarding their first point of error properly raise the subsidiary issues of whether an evidentiary hearing was held pursuant to Rule 243 and whether the evidence was competent to support the judgment. *See* Tex.R.App. P. 38.1 (statement of an issue or point will be treated as covering subsidiary question that is fairly included within the argument).

motion for default judgment, established a definite amount owed by defendant, it did not account for credits and offsets to which the defendant was entitled. Moreover, the defendant asserted that the affidavit testimony establishing a set sum "after allowing all credits and offsets" as well as reasonable attorneys' fees did not constitute *evidence* as required by Rule 243 to establish unliquidated damages.

The appellate court disagreed. First, the court noted that had it not been for the issue of credits and offsets, the case would have been a liquidated damages case and thus the written documents supporting the motion for default judgment would have been sufficient under Rule 241. *See* Tex.R. Civ. P. 241; *see also Irlbeck,* 714 S.W.2d at 57 (under Rule 241 court may assess damages without hearing evidence if claim is supported by written instrument). Second, the court held that the affidavits supporting the default judgment were *evidence* that could be properly considered by the trial court to assess an unliquidated damage award. *Irlbeck,* 714 S.W.2d at 57. Finally the court held that such evidence was sufficient to support the trial court's default judgment. *Id.*

We regard the holding in *Irlbeck* as questionable. The *Irlbeck* court based its opinion on the fact that the affidavits were admitted without objection at the default-judgment hearing. The court stated:

[I]n contending evidential support for the judgment is lacking, [Defendant] declares that the affidavits are inadmissible under Rule 802, Texas Rules of Evidence, because each statement in them is offered in evidence to prove the truth of the matter asserted. [Defendant] misperceives the full import of Rule 802, which became effective before this action was filed. Although the rule initially states that hearsay is not admissible except as provided by law, the second sentence of the rule reads: "Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay." That the rule provides for hearsay admitted without objection to have probative value sufficient to support a judgment was forecast in *Aquamarine Associates v. Burton Ship-*

*yard,* 659 S.W.2d 820, 822 (Tex.1983), and has become a principle of law. [citations omitted]

It seems accepted that at the hearing of evidence on an unliquidated claim after default, testimony of the total amount due under a written instrument is sufficient to support. an award of that amount,[citations omitted], and that such testimony may be supplied by an affidavit, albeit containing otherwise inadmissible hearsay, when it is admitted without objection.[citations omitted]. The unobjected to affidavit testimony of [affiant] supported the amount awarded on the notes in this cause. Likewise, the affidavit testimony of the attorney, again containing otherwise inadmissible hearsay but being admitted without objection, sufficiently supported the award of attorneys' fees. [citations omitted].

*Id.*

■ We disagree with this rationale because the application of rule 802 anticipates opposing counsel's and/or an opposing party's presence at the hearing to object to such inadmissible hearsay. As a general rule, neither opposing counsel nor an opposing party will be present at a default-judgment proceeding. Therefore, we decline to construe *Irlbeck* as broadly as TCB would have us and cannot accept TCB's argument that the trial court held an evidentiary hearing merely by accepting the affidavits attached to its motion.

■ Moreover, even if we had assumed that affidavits, standing alone, constituted an evidentiary hearing as required by Rule 243, we hold that such evidence was not competent to support the trial court's award for unliquidated damages, especially on the issue of attorneys' fees. *See Morgan,* 675 S.W.2d at 733 (movant in rule 243 hearing has burden of presenting competent evidence to support claim for unliquidated damages).

It is undisputed that no oral testimony was taken at the default-judgment proceeding. Moreover, it is undisputed that the only "evidence" presented to the trial court were three affidavits describing the check-kiting scheme and an amount owed for attorneys' fees. These affidavits included statements

from two of TCB's vice-presidents, Thomas Neville and Richard Bott, who were familiar with New and Pacheco's check-kiting scheme, and a third affidavit from TCB's legal counsel, Alan Waldrop, concerning attorneys' fees. In summary, Neville stated that he was in charge of overseeing New's TCB account; that New and Pacheco created fictitious balances in their respective accounts by depositing checks drawn against insufficient funds; and finally, that such conduct resulted in a loss to TCB in excess of $700,000. Bott's and Waldrop's affidavits primarily dealt with the losses and expenses resulting from New and Pacheco's scheme. Specifically, Bott testified that the amount overdrawn in New's account was $729,510.96, while Waldrop testified that a reasonable fee for prosecuting TCB's claims against New and Pacheco was $30,000.

On the issue of damages, these affidavits from interested parties are extremely sparse and merely conclusory. Such purported "evidence" does not give the trier of fact the opportunity to assess the validity of the plaintiff's allegations regarding the amount necessary to fully compensate it. *See Jones v. Andrews*, 873 S.W.2d 102, 107 (Tex.App.—Dallas 1994, no writ) (documents that represent merely conclusory allegations will not support amount awarded for unliquidated damages); *UNL, Inc. v. Oak Hills Photo Finishing*, 733 S.W.2d 402, 408 (Tex.App.—San Antonio 1987, no writ) (determination of amount of unliquidated damages requires weighing evidence presented, assessing credibility of witnesses, and assessing validity of plaintiff's allegations regarding amount necessary to fully compensate complaining party). Therefore, we hold that even according the affidavits the status of "evidence," such "evidence" cannot be considered competent and sufficient to support the trial court's award for unliquidated damages and attorneys' fees. *See Siddiqui*, 819 S.W.2d at 659 (trial court commits reversible error if it awards attorneys' fees based solely upon appellee's original petition and accompanying affidavit when nothing in petition indicates agreement fixing amount for attorneys' fees). We sustain New and Pacheco's first point of error.

Having held that the affidavits presented do not support the trial court's award for unliquidated damages following a no-answer default judgment, the Texas Supreme Court has mandated that the appropriate disposition in such a case is to remand for a new trial only on the issue of unliquidated damages. *See Heine*, 835 S.W.2d at 87. Therefore, the judgment of the trial court is affirmed as to the issue of New and Pacheco's liability, and reversed and remanded on the issue of unliquidated damages and attorneys' fees.