**Jack WIRTZ, Appellant,**

v.

**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, et al.,
Appellees.**

No. 07–94–0083–CV.

Court of Appeals of Texas,
Amarillo.

April 28, 1995.

John Steven Dwyre and Jay K. Farwell, San Antonio, for appellant.

Crenshaw Dupree & Milam, L.L.P., Cecil Kuhne, and Carr Fouts Hunt Craig Terrill & Wolfe, L.L.P., Donald M. Hunt and Gary M. Bellair, Lubbock, for appellees.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

Presenting six point-of-error contentions, Jack Wirtz seeks the reversal of a take-nothing judgment, rendered on a jury verdict, in his action, predicated on events involving six key man insurance policies issued to him, to recover actual and exemplary damages from Massachusetts Mutual Life Insurance Company, Jay Eagan, and Robert Dan Thompson, III. On the rationale expressed, the points will be overruled and the judgment will be affirmed.

Wirtz was a former owner and officer of Page & Wirtz Construction Company, a general contractor operating as a Texas corporation and a New Mexico corporation in the construction of commercial buildings in the two states. During the time material to this litigation, the Texas corporation was managed by J.C. Page, and the New Mexico corporation was managed by Wirtz. Many of Page & Wirtz's construction contracts required the corporations to provide performance bonds, which insured that Page & Wirtz or its surety would complete the contract. To limit its exposure, the surety asked Page & Wirtz to insure the lives of its key personnel.

Over a period of time, Page & Wirtz secured insurance on the lives of Page and Wirtz, the life of the latter being insured by six Massachusetts Mutual Life Insurance Company insurance policies. At the material times, Jay Eagan was a general agent acting under a contract with Mass Mutual, and Robert Dan Thompson, III was an agent acting under a contract with Eagan. Page & Wirtz paid the annual premium of $60,000 on the policies insuring the life of Wirtz which, in the event of his untimely death, would provide death benefits of $2.5 million to Page & Wirtz.

Although prior to 1985, Page & Wirtz had approximately one hundred million dollars of

construction under contract, an economic turndown adversely affected its cash flow. Its bonding agent recommended that it borrow, and Page & Wirtz did borrow, as much as possible from the cash value of the insurance policies which, by 1985 and prior to the loans, had a cash value in excess of $200,000.

The economic turndown prompted a decision by Page to buy Wirtz's stock in Page & Wirtz. By an agreement executed on 29 August 1986, Wirtz exchanged his stock for, among other things, the insurance policies. Wirtz, residing in Albuquerque, New Mexico, sent the policies to Thompson in Lubbock, notified him of his acquisition of the policies and, not being able to afford the premiums, but wanting to retain a significant amount of insurance, asked Thompson for information to enable him to make a decision. At that time, the policies had a cash value in excess of $23,000.

From this point in the developing events, the parties disagree upon the material aspects of their subsequent dealings, a number of which were unrecorded telephone conversations. Wirtz takes the position, in brief, that he instructed Thompson to cash in the policies or get as much paid-up insurance as possible; in reply, Thompson represented that time would not influence the amount of cash value in the policies, but it might go up a little with time. Wirtz recalled discussing with Thompson the intent of Mass Mutual to implement an exchange program by which debt-laden policies would be exchanged for debt-free policies with reduced benefits.[1] Wirtz also stated that Thompson offered to provide a paid-up policy with benefits of $500,000 if he would send an $8,108.14 payment. In response, Wirtz sent Thompson this letter dated 1 March 1988:

> As per your request, I am enclosing my check for $8108.14.
>
> It is my understanding that this payment will enable you to convert the $2,500,000 in Life Insurance that Page & Wirtz carried on me into $500,000 in Paid UP Life in lieu of the $400,000 in Paid Up Life previously discussed.
>
> Thank you for your persistence to get this problem resolved. Come eat some Chili's.

Wirtz concedes that in response to his letter, he received a telephone call from Thompson, but contends the purpose of it was to inform him that he had not enclosed the check. He sent the check, and it was cashed, but the proceeds were used to pay the premiums on two of his lapsed policies, not to purchase paid up insurance.

Thompson's version of the events was that when Wirtz asked for information to enable him to make a decision about the policies, he explained that the automatic premium provision of the policies would keep them in effect for a period of time. Afterwards, Thompson informed Wirtz that the policies had a cash value of approximately $23,000, and offered various suggestions concerning the retention of insurance and applying for a new policy. He also informed Wirtz that the $23,000 cash value of his policies might purchase a paid-up policy with death benefits of approximately $100,000. Thompson further suggested that Wirtz might be able to purchase a policy with benefits in the $400,000 to $500,000 range if he was willing to pay premiums of $1,000 a month for ten years, but he denied he told Wirtz that the $23,000 cash value was sufficient to purchase a paid-up policy with benefits of $400,000.

Because of Mass Mutual's intent to implement an exchange program and Wirtz, according to Thompson, thought the program was worth waiting for, Thompson notified Wirtz that two of his policies would lapse unless he remitted an $8,108.14 payment, which would keep all the policies in force and allow him to obtain the maximum amount of insurance or paid-up insurance, depending upon what Wirtz decided to do. Subsequent to that notification, Wirtz sent his 1 March 1988 letter without enclosing his check.

Upon receipt of the letter, Eagan and Thompson discussed their belief that Wirtz had misunderstood Thompson's explanations of his possible options, and agreed that Thompson should call Wirtz to rectify the misunderstanding. Thompson called Wirtz, informed him that the check was not en-

1. Mass Mutual developed the exchange program in response to the tax reforms of 1987.

closed, and when he explained that the $8,108.14 was to reinstate the lapsed policies to enable details of the exchange program to be secured, Wirtz said, "Okay. That is fine." When Thompson received the check, he applied it to reinstate the lapsed policies.

Thompson then informed Wirtz that he had two options under the exchange program: He could purchase a paid-up policy with benefits of $100,000, or he could purchase a policy which would pay benefits in the $442,000 range if he was willing to pay additional premiums. Thompson also told Wirtz that he could get back his payment if he chose not to participate in the exchange program. Wirtz responded, "Well, we will see."

Without notifying Thompson of his decision, or requesting the return of his payment, Wirtz initiated the action underlying this appeal. He sought actual, as well as exemplary damages, from Mass Mutual, Eagan, and Thompson, upon allegations of their breach of contract and duty of good faith and fair dealing, violations of the Texas Deceptive Trade Practices Act and Texas Insurance Code, common law fraud, conversion, negligent misrepresentation, and usury.

Upon submission of the multi-causes of action to the jury, the jury found, in our paraphrasing,

(1) that Eagan was the agent or apparent agent, and Thompson was acting as the agent or apparent agent of Mass Mutual, and Thompson was acting as the agent or apparent agent of Eagan, in their dealing with Wirtz relating to the six insurance policies;

(13) that there was a written or oral agreement in effect between Wirtz and Mass Mutual after September of 1986 regarding the making of loans for making payment of premiums on unconverted policies or the charging of interest on such loans; and

(14) the specific interest rates agreed to or approved by Wirtz after September of 1986 for Mass Mutual to continue making loans against each of the six policies' cash values without converting the existing policies.

However, the jury failed to find that Mass Mutual, Eagan, or Thompson, in our paraphrasing,

(2) engaged in any false, misleading, or deceptive act or practice that was a producing cause of damage to Wirtz;

(3) engaged in any unfair or deceptive act or practice in connection with the solicitation, sale or conversion of insurance to Wirtz;

(5) engaged in any unconscionable action or course of action in connection with insurance policies that was a producing cause of damages to Wirtz;

(7) committed any fraud or (8) made any negligent misrepresentations proximately causing damages to Wirtz;

(12) breached a contract in failing to convert the life insurance policies of Wirtz; or

(15) breached a fiduciary obligation to Wirtz.

Having failed to find any of the actionable allegations lodged against Mass Mutual, Eagan, or Thompson, the jury, following the trial court's instructions, did not answer the actual and exemplary damage questions nor the question concerning attorney's fees.

After the court received the jury's verdict and before it rendered judgment, Wirtz filed five motions. On 16 July 1993, he prematurely moved for a new trial, contending, inter alia, that the failure of the jury to find the matters inquired about in questions 3, 12, and 15 was contrary to the great weight and preponderance of the evidence. With two other motions, Wirtz also moved for judgment on the verdict, i.e., on the jury's answer to question 14, with respect to his excessive interest claim, and for judgment non obstante veredicto in the principle amount of $500,-000 on the ground that his 1 March 1988 letter was the acceptance of an offer and constituted a valid contract as a matter of law. In each of these motions, Wirtz included his claim for attorney's fees. Three days later, Wirtz filed his fourth motion, seeking sanctions based upon his allegations that the attorneys for Mass Mutual, Eagan, and Thompson had knowingly misrepresented a material fact to the court and offered evidence that was not accurate or authentic.

Thereafter, Wirtz filed his fifth motion, an unsworn one, seeking sanctions on the allegation that prior to a hearing set on his former motion for sanctions, the attorney for Eagan and Thompson, by an ex parte communication with the court, secured the quashal of the summons for Eagan to appear at the hearing, thereby resulting in Eagan's nonappearance and necessitating a continuance of the hearing. The motion also contained Wirtz's request for a "hearing before a Judge that would be impartial and not exposed to past ex parte communications."

Within the same time frame, Mass Mutual filed two motions, one of which was to offer additional evidence about which there was no controversy with respect to the issue of interest charged. The other was to disregard the jury's findings to questions 13 and 14 on the ground the answers were immaterial and contrary to the undisputed facts and the law.

Hearing the motions, the court denied all of them, except Wirtz's motion for sanctions, which was continued until a date certain, by its order signed on 12 November 1993. Nevertheless, the court gave Mass Mutual permission to perfect a bill of exception with respect to its motion to offer additional evidence. Thereafter, the court, rendered and signed its judgment on 1 December 1993, expressing its denial of the motions of the parties, including Wirtz's motion for sanctions, and decreed that Wirtz take nothing against Mass Mutual, Eagan, and Thompson.

Twenty-nine days later, Wirtz filed another motion for new trial on grounds other than challenges to the sufficiency of the evidence to support the jury's answers. And seventy-one days after the judgment was signed, Wirtz filed an amended motion for new trial. Neither motion was ruled upon by the trial court.

With his initial point of error, Wirtz contends the jury's responses to questions 2, 3, 5, 7, 8, 12, 13, and 15 are against the great weight and preponderance of the evidence. As an immediate response, Mass Mutual, Eagan, and Thompson reply that Wirtz failed to properly preserve the contentions for appellate review. This obtains, they submit, because Wirtz's second motion for new trial, filed within thirty days after the judgment was signed, was an amended motion for new trial which superseded his first motion for new trial, *W.C. Turnbow Petroleum Corporation v. Fulton*, 145 Tex. 56, 194 S.W.2d 256, 259 (1946); consequently, because the amended motion did not contain any challenge to the sufficiency of the evidence to support the jury's answers, which was a prerequisite to preserving the challenges for appellate review, he waived the contentions. *See* Tex.R.Civ.P. 324(b)(2) and (3). While we agree that Wirtz was required to preserve his appellate contentions, we are not persuaded that he completely failed to do so.

In order to preserve his contentions that the jury's responses to the questions were against the great weight and preponderance of the evidence, Wirtz was required to point out each contention in a motion for new trial. Tex.R.Civ.P. 324(b)(2) and (3); Tex.R.App.P. 52(d); *Cecil v. Smith*, 804 S.W.2d 509, 510 (Tex.1991). By points in his 16 July 1993 motion for new trial, Wirtz challenged the sufficiency of the evidence to support the jury's answers to questions 3, 12, and 15. The motion, albeit filed before the judgment was signed on 1 December 1993, was a timely filed motion for new trial, rule 329b(a), Texas Rules of Civil Procedure, and is deemed to have been filed on the date of but subsequent to the time of signing of the judgment. Tex.R.Civ.P. 306c. It follows that the court's overruling of the motion for new trial in its judgment is deemed to have been subsequent to the signing of the judgment.[2] Therefore, Wirtz's motion for new

---

**2.** Parenthetically, we observe that, given the written overruling of Wirtz's first motion for new trial, his second motion, although filed within thirty days after the judgment was signed, was a nullity because it was not filed, as the rule mandates, before the first motion was overruled. Tex.R.Civ.P. 329b(b); *Dallas Storage & Warehouse Co. v. Taylor*, 124 Tex. 315, 77 S.W.2d 1031, 1034 (1934); *Kalteyer v. Sneed*, 837 S.W.2d 848, 851 (Tex.App.—Austin 1992, no writ). And Wirtz's supplemental motion for new trial, filed more than thirty days after the judgment was signed, was also a nullity and could not be considered by the trial court. Tex.R.Civ.P. 329b(b); *Davis v. Mathis*, 846 S.W.2d 84, 90 (Tex.App.—Dallas 1992, no writ); *Equinox Enterprises v. Associated Media*, 730 S.W.2d 872, 875 (Tex.App.—Dallas 1987, no writ).

trial points, by which he contended that the jury's responses to questions 3, 12, and 15 were against the great weight and preponderance of the evidence, preserved those contentions for appellate review by his compliance with rule 329b, *supra*, and the court's subsequent overruling of his motion for new trial. *Cecil v. Smith*, 804 S.W.2d at 512. However, because Wirtz's motion for new trial did not contain any points by which he contended that the jury's responses to questions 2, 5, 7, 8, and 13 were against the great weight and preponderance of the evidence, he may not now present those contentions for appellate review. Tex.R.Civ.P. 324(b)(2) and (3).

■ Reiterated, in answering questions 3, 12, and 15, the jury failed to find that Mass Mutual, Eagan, or Thompson respectively (3) engaged in any unfair or deceptive act or practice in connection with the solicitation, sale or conversion of insurance to Wirtz, or (12) breached a contract in failing to convert the life insurance policies of Wirtz, or (15) breached a fiduciary obligation to Wirtz. Wirtz had the burden of proof, and the failure of the jury to so find means that Wirtz did not convince the jury by a preponderance of the evidence to make affirmative findings. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988). His against-the-great-weight-and-preponderance point is a proper attack on the jury's failure to find, which requires us to examine all of the evidence and remand for a new trial if we conclude that a failure to find was so against the great weight and preponderance of the evidence as to be manifestly unjust. *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973).

■ With respect to the third question, Wirtz represents that an unfair or deceptive act or practice occurred because Thompson testified he told him, Wirtz, that the cash value would stay the same if he waited, the net amount to him would not change, time would not influence the amount of cash value of the policies, there was a possibility the cash value could increase with time, and the insurance company was not depleting his cash value situation, all of which was untrue. Since Thompson did testify that the conduct occurred, the jury's response was against the

great weight and preponderance of the evidence.

However, the jury, exposed to the whole of Thompson's testimony, heard him defend his statements as being accurate during the time frame when efforts were undertaken to obtain additional insurance for Wirtz and to implement Mass Mutual's exchange program. He stated that he told Wirtz the policies "are on policy loan" and the net amount to him was not going to change over the next one or two years, because the cash value of the older policies would increase by more than the amount borrowed, so basically the cash value was going to stay the same. Though Thompson conceded that a long time would influence the amount of cash, he said he told Wirtz that the time to make the decisions would be less than two years, which would not influence the net cash available to him. Thompson would not admit that his statements were untrue.

Long accorded the role of judging the credibility of the witnesses and the weight to be given their testimony in ascertaining the facts proved, *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951), the jury had the right to believe that Thompson's statements to Wirtz, considered in context, were not shown by a preponderance of the evidence to constitute any unfair or deceptive act or practice. Therefore, we may not disturb the jury's negative answer even were we to believe that the evidence preponderates toward an affirmative finding. *Herbert v. Herbert*, 754 S.W.2d at 144.

■ In attacking the jury's failure to find, in answering question 12, that Mass Mutual, Eagan, or Thompson breached a contract in failing to convert his life insurance policies, Wirtz reasons that his 1 March 1988 letter and tender of the $8,108.14 check was an offer to buy, and the cashing of the check was an acceptance to provide, a $500,000 paid-up life insurance policy. Again, however, the jury heard additional evidence. It had the 1 March 1988 letter, in which Wirtz stated his "understanding" that the $8,108.14 would enable the conversion of his policies into a $500,000 paid-up policy "in lieu of the $400,000 in Paid Up Life previously dis-

cussed." The jury heard the testimony that upon receipt of the letter, Thompson telephoned Wirtz to correct his "understanding," explained the purpose of the $8,108.14 was to reinstate the lapsed policies, and received Wirtz's acquiescence of "Okay. That is fine"; that Wirtz did "doubt," albeit he did not know, that the $23,000 cash value would purchase $400,000 paid-up insurance; and that $8,108.14 would not have purchased an additional $100,000 paid-up insurance based upon Wirtz's age. In fulfilling its role, the jury had the right to disbelieve that Thompson had offered to furnish a Mass Mutual paid-up policy of $500,000 for $8,108.14, which Wirtz accepted by remitting that sum, and we are not authorized to disturb the jury's answer merely because it might have drawn a different conclusion from the evidence. *Benoit v. Wilson,* 239 S.W.2d at 797.

The foregoing address is sufficient for overruling Wirtz's sixth-point contention that the court erred in failing to grant him judgment *non obstante veredicto* and rendering judgment in the amount of $500,000 plus attorney's fees, because "[i]t is undisputed that [he] never authorized any disbursements other than those contained in the unambiguous offer [the 1 March 1988 letter] and ... the $8,108.14 [was spent] for a purpose other than that specified." There being evidence controverting Wirtz's assertions, thereby raising a fact issue for resolution by the jury, the court did not err in denying Wirtz's motion for judgment n.o.v. *Exxon Corp. v. Quinn,* 726 S.W.2d 17, 19 (Tex.1987). The sixth point of error is overruled.

█ The address regarding question 12 also suffices as a response to Wirtz's contention that the jury's failure to find, in answering question 15, that neither Mass Mutual, Eagan, nor Thompson breached a fiduciary obligation to Wirtz, is against the great weight and preponderance of the evidence. The jury was instructed that

a "breach of fiduciary duty" occurs when a person or company receives funds from another with specific instructions as to how those funds are to be used, and the person or company uses those designated funds for some other purpose unless the specific

purpose is modified by agreement or acquiescence.

Although Wirtz argues that it is undisputed that the funds were received from him with specific instructions on how those funds were to be used, but they were used for a different purpose, and there is no evidence of "acquiescence" or "agreement" to modify the specific terms of the 1 March 1988 letter, the jury, as noted, heard testimony of Wirtz's acquiescence or agreement that the funds were to be used to reinstate his lapsed policies. The jury was entitled to credit the testimony of acquiescence or agreement and refuse to find a breach of a fiduciary obligation. Wirtz's first point of error is overruled.

█ Closely allied to his last contention is Wirtz's fourth-point contention that the trial court erred in its charge on breach of fiduciary obligation by including, over his objection, a condition that instructions to use funds for a specific purpose can be modified by acquiescence. He argues that no case in any jurisdiction has so held; yet, he has not cited any authority holding that such instructions cannot be modified by acquiescence. But, in any event, the court cannot be charged with error in submitting the instruction which, under the evidence, the court deemed proper to enable the jury to reach a verdict. *See* Tex.R.Civ.P. 277.

█ Wirtz's argument is premised upon his understanding that Thompson made an offer to provide him with a Mass Mutual $500,000 paid-up insurance policy upon his payment of $8,108.14, that he accepted the offer by tendering that sum of money, thereby creating a fiduciary obligation to apply the money for that purpose, and there was a breach of the fiduciary obligation when the money was applied to another purpose. However, Thompson denied that he ever made that offer; rather, he testified that he told Wirtz the $8,108.14 was required to reinstate his policies in order to secure the computerized details of the exchange program, and that Wirtz agreed to that application.

Accepting Wirtz's understanding would constitute a contract by offer and acceptance, and a breach of the fiduciary obligation to fulfill the contract; but, accepting Thomp-

son's account would evince an offer by Wirtz, a rejection of the offer by Thompson with a proposal for the application of the $8,108.14 other than offered by Wirtz in his letter, and an acquiescence by Wirtz. Thus, the instruction, covering the antithetical testimony, was proper in that it found support in the evidence and might be of some assistance to the jury in answering the question submitted. *Louisiana & Arkansas Ry. Co. v. Blakely,* 773 S.W.2d 595, 598 (Tex.App.—Texarkana 1989, writ denied); *Mejia v. Liberty Mut. Ins. Co.,* 544 S.W.2d 690, 691 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ). Wirtz's fourth point of error is overruled.

Pretrial, Wirtz submitted requests for admissions of fact, part of which were requests to admit or deny the existence of long distance telephone records related to his $8,108.14 payment. Answering, Mass Mutual admitted that it had no such telephone records; Thompson "denied" that he had no such telephone records made to or received from Wirtz; and Eagan admitted that he had no record of telephone calls made to Wirtz related to his payment of $8,108.14. Giving his trial testimony, Thompson testified and reiterated, without objection, that upon receipt of Wirtz's 1 March 1988 letter, he telephoned Wirtz about the purpose of the $8,108.14.

During the cross-examination of Thompson, Wirtz read Eagan's admission that he had no records of telephone calls by him or his staff with Wirtz regarding his payment of $8,108.14 or the purpose of such payment. Thereafter, when Thompson testified that he was absolutely certain that after he received Wirtz's 1 March 1988 letter, he initiated a long distance telephone call to Wirtz on Eagan's phone, Wirtz informed the court that he would ask the court to instruct the jury on the effect of the admissions regarding the phone records. The court replied that no such instruction would be given. Wirtz unsuccessfully objected to the court's charge because it did not include this instruction: "Any matter admitted by a party in response to an admission is conclusively established as to that party."

With his second point of error, Wirtz contends the court erred in failing to give the instruction, albeit he does not cite any authority entitling him to the instruction. Mass Mutual replies that the instruction would be a comment on the weight of the evidence prohibited by rule 277, *supra.*

Without pausing to address either the contention or the reply, it suffices to state that Wirtz waived his right to rely upon the admission. This obtains, for once a request for an admission of fact is admitted, it is a judicial admission which may not be controverted by the introduction of testimony; however, a party relying upon the admission must protect the record by objecting to the introduction of controverting evidence and to the submission of any issue bearing on the fact admitted, or else waive the right to rely upon the admission. In the trial of the present cause, Thompson gave, and Wirtz also elicited from him, unobjected to testimony controverting the admission; consequently, Wirtz waived the right to rely upon the admission. *Marshall v. Vise,* 767 S.W.2d 699, 700 (Tex.1989). For this reason, the trial court cannot be faulted for not giving the requested instruction. Wirtz's second point of error is overruled.

As mentioned earlier, after the jury returned its verdict and before the court rendered judgment, Wirtz filed five motions, one of which was an unsworn one seeking sanctions arising from an alleged ex parte communication with the court, and containing the request for a "hearing before a Judge that would be impartial and not exposed to past ex parte communications." With his third point of error, Wirtz contends the court erred by not following proper procedures for a motion to recuse for judicial misconduct and by failing to award costs incurred as a result of such judicial misconduct. In this regard, Wirtz argues that the court improperly failed to recuse itself and summarily denied the motion to recuse without referring the motion to the presiding judge for a hearing. We do not deem Wirtz's contention to be valid.

To recuse a judge, a party must follow the procedure prescribed by rule 18a, Texas Rules of Civil Procedure. The rule requires, inter alia, that "[a]t least ten days

before the date set for trial or other hearing," the party may file a motion, which "shall be verified," and copies of the motion "shall be served on all other parties or their counsel of record, together with notice that movant expects the motion to be presented to the judge three days after the filing of such motion unless otherwise ordered by the judge." The procedural requirements of the rule are mandatory, and a party who fails to comply with them waives his right to complain of a judge's failure to recuse himself or herself. *Vickery v. Texas Carpet Co., Inc.,* 792 S.W.2d 759, 763 (Tex.App.—Houston [14th Dist.] 1990, writ denied).

█ Wirtz's motion was not verified, and neither the notice of the expectation of presentment, nor its presentment, to the judge three days after filing was evinced. As a result, Wirtz waived his right to complain that the judge failed to recuse himself. *Id.* His third point of error is overruled.

In the course of his testimony, Wirtz said that in 1985, the New Mexico corporation was not in financial trouble and, although the corporation made and lost money on different jobs, the corporation as a whole made money. Mass Mutual, Eagan, and Thompson offered Ansel Howard Cowen to show the inaccuracy of Wirtz's testimony by evincing through his personal knowledge and financial records that the New Mexico corporation lost money in 1985.

As a surety bond underwriter for the surety on Page & Wirtz's performance bonds, Cowen had been assigned as an underwriter for the Page & Wirtz account. In that capacity, he reviewed the annual financial statements of Page & Wirtz. He identified two exhibits, DE–7 and DE–8, as the 1985 year-end financial statements of the two Page & Wirtz corporations, and another exhibit, DE–9, as a 30 June 1986 financial statement of the New Mexico corporation. He said he was personally familiar with the statements, which he would review in the process of having bonds written. However, on cross-examination, Cowen, conceding that the exhibits were not his records, that he did not know from whom they had been secured, and that, contrary to normal practice, neither carried the signature of an accountant or an accounting firm, said the statements "look[ed] familiar," and "to the best of [his] knowledge" were the financial statements prepared by Page & Wirtz's accounting firm, upon the representation of which he relied for their being done in accordance with generally accepted accounting principles. Over Wirtz's objections, including a hearsay objection, the statements were admitted into evidence, and Cowen was allowed to testify that, among other things, they reflected that the New Mexico corporation had lost more than three million dollars.

With his fifth point, Wirtz contends that the court erred in allowing improper and prejudicial evidence based on the statements, the effect of which was an attempt to discredit him in unrelated matters and not for any purpose related to the cause. We agree.

█ Under this record, Cowen did not identify the statements and guarantee their correctness so as to make them and his testimony of their contents admissible. *See Decker v. Commercial Credit Equipment Corp.,* 540 S.W.2d 846, 849 (Tex.Civ.App.—Texarkana 1976, no writ). Instead, Cowen, assuming the unsigned statements were the business records of Page & Wirtz, but without knowing from whom they were secured, attempted to authenticate them by saying they looked familiar and to the best of his knowledge were the statements prepared by Page & Wirtz's accounting firm. Other than that attempt, he could not, when pressed, vouch for their accuracy. Thus, the statements neither were authenticated by Cowen's testimony nor self authenticated within the purview of rules 901 and 902, Texas Rules of Civil Evidence. The failure to authenticate the documents rendered them inadmissible, *Durkay v. Madco Oil Co., Inc.,* 862 S.W.2d 14, 24 (Tex.App.—Corpus Christi 1993, writ denied), and the trial court erred in admitting the statements into evidence and permitting Cowen to testify to their contents.

█ Nevertheless, as Wirtz recognizes in presenting his point of error, the exhibits and Cowen's testimony concerning them pertained to matters unrelated to the causes of action he had alleged. Reversible

**424**

error does not occur upon the erroneous admission of evidence which is not controlling on an issue material to the disposition of the cause; to obtain a reversal because the court erred in admitting the evidence, it must be shown that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989). Then, because none of the issues material to Wirtz's causes of action were controlled by the erroneously admitted evidence, reversible error has not been shown. *Texaco, Inc. v. Penzoil, Co.,* 729 S.W.2d 768, 837 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). Wirtz's fifth point of error is overruled.

The judgment is affirmed.