In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00060-CV


______________________________




ARTHUR X. CARSON, Appellant



V.



A. SERRANO AND THE TEXAS DEPARTMENT OF


CRIMINAL JUSTICE, INSTITUTIONAL DIVISION, Appellees



 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 99C1351-202




 



Before Ross, Cornelius* and Grant,** JJ.

Opinion by Justice Cornelius

Concurring Opinion by Justice Grant



______________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

**Ben Z. Grant, Justice, Retired, Sitting by Assignment

O P I N I O N



 Arthur X. Carson, an inmate, appeals the dismissal of his lawsuit against A. Serrano and the
Texas Department of Criminal Justice, Institutional Division, alleging "extrinsic fraud under the
auspice of a judgment." The trial court dismissed Carson's suit, alleging want of prosecution. On
appeal, Carson raises three issues: (1) whether the trial court was without jurisdiction to dismiss the
case, (2) whether the trial court abused its discretion in failing to conduct a hearing on the motion
for reinstatement, and (3) whether Chapter 14 filing fees apply to Carson's suit, which he styled
"PETITION FOR BILL OF REVIEW." 

 In his first issue, Carson contends that the trial court lacked jurisdiction to dismiss his action
because he filed a motion for the trial judge to recuse himself. To recuse a judge, a party must
follow the procedure prescribed by Texas Rule of Civil Procedure 18a. Wirtz v. Mass. Mut. Life Ins.
Co., 898 S.W.2d 414, 422 (Tex. App.-Amarillo 1995, no writ). According to Rule 18a, on the day
the motion for recusal is filed, copies must be served on all other parties or their counsel of record,
together with a notice that the movant expects the motion to be presented to the judge three days
after the filing of such motion unless otherwise ordered by the judge. Tex. R. Civ. P. 18a(b). If a
party fails to follow this procedure, he waives the right to complain of a judge's failure to recuse
himself. Wirtz v. Mass. Mut. Life Ins. Co., 898 S.W.2d at 423. Although Carson did file a motion
for recusal, there is no evidence Carson gave notice of expectancy of presentment to the judge three
days after filing, and there is no evidence the judge was presented with the motion three days after
filing. Therefore, Carson may not complain about the judge's failure to recuse himself because
Carson did not follow the procedure prescribed by Rule 18a. 

 Secondly, Carson contends the trial court failed to conduct a hearing on his motion for
reinstatement. On February 26, 2002, the court set a hearing on the dismissal of Carson's case for
March 11, 2002, and did issue a notice to that effect. On March 8, 2002, Carson filed a motion for
reinstatement. Carson alleges his due process rights were denied because there was no hearing on
his motion for reinstatement. However, at the time of Carson's request for reinstatement, his case
had not been dismissed. Moreover, the trial court did hold a hearing on March 11, 2002. Carson
could have shown good cause not to dismiss the case at that time. 

 Carson's real complaint on this point seems to be that his request for a writ of habeas corpus
ad testificandum for the March 11 hearing was not granted, rather than that a hearing was not held. 
Review of trial court decisions on this issue is by an abuse of discretion standard. Armstrong v.
Randle, 881 S.W.2d 53, 57 (Tex. App.-Texarkana 1994, writ denied). A prison inmate's right to
access the courts does not include a right to appear personally. Brewer v. Taylor, 737 S.W.2d 421,
423 (Tex. App.-Dallas 1987, no writ). In considering an inmate's right to appear, the trial court must
balance the preservation of the correctional system's integrity and the prisoner's right to access. Id.
at 423-24. Several factors should be considered: (1) the cost and inconvenience of transporting the
inmate to court; (2) the security risk and danger to the court and the public by allowing the inmate
to attend court; (3) whether the inmate's claims are substantial; (4) whether a determination of the
matter can reasonably be delayed until the inmate is released; (5) whether the inmate can and will
offer admissible, noncumulative testimony that cannot be offered effectively by deposition,
telephone, or otherwise; (6) whether the inmate's presence is important in judging his demeanor and
credibility compared with that of other witnesses; (7) whether the trial is to the court or to a jury; and
(8) the inmate's probability of success on the merits. Armstrong v. Randle, 881 S.W.2d at 57;
Brewer v. Taylor, 737 S.W.2d at 423. In his request for a writ of habeas corpus ad testificandum,
Carson states "Plaintiff's [Carson's] Testimony is material to His case," but he offered no evidence
of why he could not testify by deposition or telephone or why his presence in the courtroom was
important. Therefore, the trial court did not abuse its discretion in failing to grant Carson's request
for a writ of habeas corpus ad testificandum.

 Finally, Carson contends that, because his original petition was a bill of review and not a
lawsuit under Chapter 14 of the Texas Civil Practice and Remedies Code, the filing fees and court
costs under Section 14.006 are inapplicable. See Tex. Civ. Prac. & Rem. Code Ann. § 14.006
(Vernon 2002). Unless an action is brought under the Texas Family Code, an action brought by an
inmate and accompanied by an affidavit or unsworn declaration of inability to pay costs is governed
by Chapter 14. Tex. Civ. Prac. & Rem. Code Ann. § 14.002 (Vernon 2002). Additionally, the
rules set out in Chapter 14 may not be modified or repealed by the regular Rules of Civil Procedure. 
Tex. Civ. Prac. & Rem. Code Ann. § 14.014 (Vernon 2002); Jackson v. Tex. Dep't of Criminal
Justice, 28 S.W.3d 811, 813 (Tex. App.-Corpus Christi 2000, pet. denied). There is no exception
for an inmate's petition for a bill of review. Carson brought this action while an inmate and filed an
affidavit of poverty with his petition. Because his petition was not brought under the Texas Family
Code and because the rules of Chapter 14 cannot be modified by the regular Rules of Civil
Procedure, Chapter 14 applies to Carson's bill of review.

 We affirm the judgment of the trial court.


 William J. Cornelius*

 Justice


*Chief Justice, Retired, Sitting by Assignment












CONCURRING OPINION

 I concur, but I would emphasize that the requirement that the party present the motion to the
trial court does not mean that the party has to physically present the motion to the judge. In a
situation in which the moving party is incarcerated, it is not practical for this party to hand deliver
the motion to the judge. This requirement can be satisfied by bringing the motion to the trial court's
attention in other ways; directly mailing the motion to the trial judge would satisfy that rule. 



 Ben Z. Grant*

 Justice


*Justice, Retired, Sitting by Assignment


Date Submitted: August 15, 2002

Date Decided: January 24, 2003



the holder of the note take action against the maker as a condition precedent to his liability on
the guaranty. Hopkins v. First Nat'l Bank at Brownsville, 551 S.W.2d 343, 345 (Tex. 1977) (per
curiam). The lender may bring an action against the guarantor of payment without joining the
principal debtor. Ferguson v. McCarrell, 582 S.W.2d 539, 541-42 (Tex. Civ. App.--Austin), writ
ref'd n.r.e., 588 S.W.2d 895 (Tex. 1979) (per curiam). Under the terms of the guaranty agreements
given by each of the four men to Hibernia, the holder could proceed against the corporation, all of
the four guarantors, or any one or more of the guarantors without the joinder of the others. Also
under the terms of that guaranty agreement, the holder of the note and lien had the ability to proceed
against the security or not; that was its choice. 

Position of Assignee of Obligation as to Collateral

 An assignee of a promissory note stands in the shoes of the assignor and obtains the rights,
title, and interest that the assignor had at the time of the assignment. Thweatt v. Jackson, 838
S.W.2d 725, 727 (Tex. App.--Austin 1992), aff'd, 883 S.W.2d 171 (Tex. 1994). Therefore, when
Bunch acquired the note from Hibernia, he stepped into the shoes of Hibernia, having the same rights
which Hibernia possessed.

Release of Security by Holder

 Among those rights which were granted under the guaranty agreements to the holder of the
note and lien was the right to "release any security, with or without substitution of new collateral." 
This was precisely what Bunch did. He released the certificate of deposit which was the security for
the note; there is no evidence that he actually foreclosed the security interest with which the
certificate of deposit was impressed and did not, therefore, need to follow the dictates of the law in
the procedure to be followed in effecting foreclosure.

 The guaranty agreements signed by the parties permitted the holder of the note to release the
security of the note without jeopardizing the holder's claim against the guarantors. Under such an
agreement, the release of a secured item does nothing to require application of the proceeds of the
security to the underlying debt; accordingly, the release of the $100,000.00 certificate of deposit to
the owner of it did not constitute accord and satisfaction of the debt secured by it. 

Release of Liability by Holder/Co-Guarantor

 Bunch, in his capacity as the holder of the promissory note, also attempted to release himself
from liability as a guarantor of the note. We determine that he could not use this means to
unilaterally exculpate himself of any proportional liability he may hold as one of the four guarantors
of the note.

 When Bunch acquired the promissory note from Hibernia, he did not trade the hat of
guarantor of the note for that of holder of the obligation; he wore both hats. As between the
coguarantors, he still maintained some liability to his coguarantors for the satisfaction of the debt.

 Surprisingly, this issue of a guarantor cum noteholder seeking relief from his coguarantors
had not been presented to Texas courts until 2004, when it was shown as an issue in Byrd v. Estate
of Nelms, 154 S.W.3d 149 (Tex. App.--Waco 2004, no pet.). As here, a guarantor of a promissory
note purchased the underlying obligation and brought action against its coguarantors in its new
capacity as the holder of the promissory note. The Waco court, noting that the issue of the relative
liability among coguarantors in such a circumstance was then a case of first impression in Texas,
looked at decisions in many other jurisdictions and concluded that

 [C]ontribution is an equitable remedy that implies a contract between guarantors
ensuring that in the event one of the guarantors is called to pay the debt, the other
guarantors would contribute their proportionate share, and no more. See Curtis v.
Cichon, 462 So. 2d 104, 105-06 (Fla.2d D.C.A 1985). The assignment of an
underlying note and guaranty agreement to a guarantor does not change the status of
the guarantor in relation to his co-guarantors. Mandolfo, 253 Neb. at 931, 573
N.W.2d at 138. Therefore, as a matter of law, the relationship between guarantors
restricts recovery to their contributive share. Weitz v. Marram, 34 Md. App. 115,
121-22, 366 A.2d 86, 89-90 (1976).

Id. at 164.

 The Waco court observed, in adopting the wording of a decision from a sister state that 

 Common sense dictates this result. All . . . sureties agree to be liable for full payment
of the note if the principal debtor defaults and are further liable for contribution to
the co-surety who actually pays the creditor. Thus, each surety's ultimate liability
may be fixed at his virile share of the note. If one of several sureties, as here, could
purchase the note (or otherwise contractually subrogate to the creditor's rights) and
then collect the full amount of the note from a co-surety, the purchasing surety would
thereby escape liability for his virile portion of the debt. If [Appellants] were able
to succeed on their theory, then upon the debtor's default, every surety would race to
the bank to purchase the note. The Civil Code does not contemplate that a surety's
liability should be premised upon the fortuity of being the first to purchase the
debtor's note.


Byrd, 154 S.W.3d at 165 (quoting Boyter v. Shreveport Bank & Trust, 65 B.R. 944, 948 (W.D. La.
1986)). 

Reciprocal Co-Guarantor Liability

 Although the particular fact situation presented here has only recently been addressed by the
courts of this State, the question of liability of coguarantors to each other has a long history. For well
over a hundred years, it has been a "general and familiar rule of law" that, as among coguarantors,
each will bear his proportional part of the burden to the effect that should one of them pay more than
his proportional part, the others will contribute equally to indemnify him for any amount in excess
of his proportional part. Merchants' Nat'l Bank v. McAnulty, 89 Tex. 124, 33 S.W. 963 (1896); Sisco
v. Briones, 809 S.W.2d 524 (Tex. App.--San Antonio 1991, no writ); Byrd, 154 S.W.3d at 164.

 Bunch, still being among the joint guarantors of the note, is not entitled to recover the entire
amount of the promissory note from his coguarantors. There were four joint guarantors of the note: 
Bunch, Lavender, Lively, and Coburn. Therefore, Bunch can recover judgment for only three-fourths of the jointly-owed amount.

Attorneys' Fees

 The attorneys' fees which were awarded to Bunch in response to his motion for summary
judgment were based on his recovery of the entire amount of the promissory note. Since that
judgment has been reversed and since the appeal of Lavender is partially successful, the trial court
may determine a different amount of attorneys' fees for which each of the coguarantors would be
liable.

 The court properly found that the surrender to Bunch of the $100,000.00 certificate of deposit
held as collateral for the note did not operate as accord and satisfaction.

 The court was in error in awarding Bunch judgment against his coguarantors for the full
amount of the debt, and we hold that he was only entitled to judgment for three-fourths of the
obligation of which all four parties guaranteed payment. By having acquired the note by assignment,
however, Bunch does benefit by being able to seek recovery, jointly and severally, against the other
three joint guarantors. (2) 

 We reverse the judgment and remand this case to the trial court for further proceedings
consistent with our opinion.





 Bailey C. Moseley

 Justice


Date Submitted: January 24, 2007

Date Decided: March 6, 2007


1. The final judgment called for postjudgment interest on both the debt and attorney's fees to
be calculated at the rate of ten percent per annum, substantially different from and greater than that
prescribed by Section 304.002 of the Texas Finance Code. See Tex. Fin. Code Ann. § 304.002
(Vernon 2006). However, no point of error was raised concerning this issue and we do not address
it. 
2. We recognize that rights of contribution exist between and among Lavender, Lively, and
Coburn should one or more of them pay more than the proportionate liability to satisfy the three-fourths of the debt, but issues of contribution among them is not presented here.